ESTATE OF MILLER: SCHOEN and another, Respondents, vs. VAN HOGEN and another, Appellants.

*December 1—December 30, 1953.*

For the appellants there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan* and *Fred F. Kaftan*.

For the respondents there was a brief by *Warne, Duffy &
Dewane* of Green Bay, and oral argument by *L. O. Warne.*

BROWN, J.   There is not a great deal of conflict in the
evidence concerning incidents and events.  The dispute comes
in the inferences to be drawn from them.  Appellants submit
that everything done by respondents during the days when
Charles Miller lived in the Schoen home had the diabolical
purpose of securing his fortune for themselves and to that
end they kept him their mental and physical prisoner.  For
example, soon after Miller returned from the hospital, in
the first week in September, Walter Schoen told the police
that Miller was in no condition to drive his automobile, and
the police persuaded Miller to give up his driver's license.
Miller did not know of Walter's part in this.  To appellants
this transaction appears as cruelty to an old man whose only
pleasure was to drive his automobile, maliciously done to
separate him from his friends and to keep him in captivity.
On the other hand, less partisan people might well conclude
that relatives had a responsibility to the general public as
well as to the individual to see that a man of eighty-five years,
near death from cancer, and with demonstrated suicidal
tendencies, did not pilot his car around the public streets.
The trial court determined that the latter purpose was neces-
sary, whether or not that was Walter's primary object.  It
appears that the close watch which the Schoens kept over
Miller came after the execution of the will and that until his
stroke he moved about freely, discussed his affairs with his
banker, and announced his purpose of making a new will to
replace the suicide one.  Something of surveillance over a
dying man, partially paralyzed and with suicidal tendencies,
who is, after all, a relative, is not necessarily suspect.

As the trial court's function is to determine the facts and
to weigh them, *Will of Russell* (1950), 257 Wis. 510, 44

N. W. (2d) 231, so, too, the inferences to be drawn from established facts are for the trier of the fact, in this case the trial court. Its findings in these respects should not be interfered with unless contrary to the great weight and clear preponderance of the evidence, and undue influence is not to be proved but by clear, convincing, and satisfactory evidence. *Will of Schaefer* (1932), 207 Wis. 404, 411, 412, 241 N. W. 382; *Estate of Feeley* (1948), 253 Wis. 204, 213, 33 N. W. (2d) 139. The written decision filed by the trial court shows how conscientiously it reviewed the evidence before reaching its conclusion, which it stated as findings of fact, that Charles Miller was not a person subject to undue influence nor was the will of September 24, 1951, the result of undue influence.

We conclude that there is no such preponderance of evidence in appellants' favor as will permit us to set aside the findings of fact by the learned trial court. Its judgment admitting the will to probate must be affirmed.

The trial court allowed the appellants their costs in propounding the will of August 28, 1951, to be paid by the estate, as permitted by sec. 324.12, Stats., reading:

"*Costs in will contests.* Costs shall not be awarded to an unsuccessful contestant of a will unless he is a special guardian appointed by the county or circuit judge, or is named as an executor in a paper propounded by him in good faith as the last will of the decedent."

Referring to appellants' attempt to prove the will of August 28th, the trial court found, "There is no question but what the will was propounded in good faith." The proponents of the August 28th will were the executors named in it and the issue of their good faith was for the court. We have no reason to question the court's determination and, good faith being found, the statute supports the court's allowance of costs.

426

*By the Court.*—Respondents' motion to review the allowance of costs denied. Respondents' motion for cost of printing their entire brief granted. Judgment affirmed and cause remanded for further proceedings according to law.