PEABODY SEATING COMPANY, INC., Respondent, v. JIM
CULLEN, INC., and another, Appellants.

*No. 132.   Argued October 2, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 546.)

120

For the appellants there was a brief by *Campbell, Brennan, Steil & Ryan, S.C.,* and *Thomas J. Basting,* all of Janesville, and oral argument by *Mr. Basting.*

For the respondent there was a brief by *Heft, Coates, Heft, Henzl & Bichler* and *Robert H. Bichler,* all of Racine, and oral argument by *Robert H. Bichler.*

ROBERT W. HANSEN, J. Appellants make three contentions on appeal: (1) That the trial court erred in permitting Peabody to maintain its suit since it commenced the action without a certificate of authority to do business in Wisconsin; (2) that Peabody cannot recover under the bond because it does not have lien rights under the Wisconsin statutes; and (3) that Peabody is precluded from recovering under the bond because it failed to give the ninety-day notice required by the bond. In the order raised, these contentions will be considered.

*Certificate of authority.*

Appellants contend that Peabody was doing business within this state and, therefore, was required to have a certificate of authority before it could commence or maintain this action.[1] The trial court found that Peabody's obtaining a certificate of authority after the suit was started cured this defect.

However, it is clear that sec. 180.847 (1), Stats., applies only if an out-of-state corporation is "transacting business" in this state. So the first inquiry must

---

[1] Sec. 180.847 (1), Stats., provides:

"180.847 **Transacting business without certificate of authority.** (1) No foreign corporation transacting business in this state without a certificate of authority, if a certificate of authority is required under this chapter, shall be permitted to maintain or defend a civil action or special proceeding in any court of this state, until such corporation has obtained a certificate of authority. Nor shall a civil action or special proceeding be maintained in any court of this state by any foreign corporation or a successor, assignee or grantee of such corporation on any right, claim or demand arising out of the transaction of business by such corporation in this state at a time when such corporation was without such certificate of authority until a certificate of authority has been obtained by such corporation or, in the case of a successor, assignee or grantee of such corporation, until all fees which were payable by such corporation under this chapter not exceeding the maximum sum of $300 have been paid."

be as to whether the statute applies at all. This asks, "was Peabody doing business in Wisconsin?"

The trial court found that American was an agent of Peabody and then imputed the acts of American to Peabody, concluding that Peabody was doing business in the state through its agent.[2] The trial court holding that American was an agent of Peabody appears to us to be incorrect. The elements necessary to support such finding of agency have been set forth by this court to be: (1) "the express or implied manifestation of one party that the other party shall act for him;" (2) "who has retained the right to control the details of the work;" and (3) "whether the party agreeing to perform the service is engaged in a distinct occupation or business apart from that of the person who engages the services."[3]

None of the required elements can be located in the case before us. There is no authority delegated to American to act for Peabody. In fact, the agreement between them clearly provides that American is to *buy* the seats from Peabody and then American is to *sell* them. The agreement expressly prohibits American from using the name "Peabody" in the name under which it does business. There is no evidence that Peabody controlled

---

[2] The trial court stated:

"The case of *Bulova Watch Co. v. Anderson* (1955), 270 Wis. 21, at page 27, states as follows:

" 'In order for a foreign corporation to transact business in a state, it must be physically present within the state in the sense of having an officer or agent there who is performing some act on behalf of the corporation.'

"The plaintiff appointed American Products, Inc., as its exclusive sales agent in the state of Wisconsin (see Plaintiff's Exhibit 1). The materials purchased could not have been purchased directly from Peabody Seating Company, Inc., but had to be purchased from the third-party defendant as agent for the plaintiff. Therefore, the plaintiff was 'transacting business in this state.' "

[3] *Boehck Construction Equipment Corp. v. Voigt* (1962), 17 Wis. 2d 62, 68, 69, 115 N. W. 2d 627, 117 N. W. 2d 372.

in any way the "details of the work" done by American. American also held franchises with other companies and the clear indication is that its business was separate and "apart" from that of Peabody.

With American held not to be an agent of Peabody on this record, there is no other basis in this record for finding that Peabody was "transacting business" in this state. Peabody had no salesmen or employees in Wisconsin, and made no sales to consumers in this state. Its personnel were present in this state only to visit and assist American. Cullen's contract was with American; all of Cullen's dealings, with the exception of one letter, were with American. We see no facts in this record on which Peabody could be held to be doing business in this state.[4]

On this record we hold that Peabody was not "transacting business" in this state and, therefore, not required to obtain a certificate of authority under sec. 180.847 (1), Stats. While we travel a different route than that taken by the trial court, we arrive at the same conclusion: Peabody had standing to bring and maintain its lawsuit. We affirm the trial court ruling so holding.

*Recovery under bond.*

Appellants contend that Peabody is not a "claimant" entitled to a statutory lien under either sec. 289.16 (1) or sec. 289.53 (1), Stats. 1965. That is correct. Peabody, as the supplier of the subcontractor (American) of the contractor (Cullen), does not have in this state a statutory lien.[5]

---

[4] *See: Bulova Watch Co. v. Anderson* (1955), 270 Wis. 21, 70 N. W. 2d 243; *Upper Lakes Shipping v. Seafarers' International Union* (1963), 18 Wis. 2d 646, 119 N. W. 2d 426.

[5] *See: Gilson Brothers Co. v. Worden-Allen Co.* (1936), 220 Wis. 347, 265 N. W. 217; *Lehman Tire & Supply v. Mashuda Construction Co.* (1961), 14 Wis. 2d 176, 109 N. W. 2d 650; *Boehck Construction Equipment Corp. v. Voigt, supra; Hribar Trucking, Inc. v. State* (1964), 22 Wis. 2d 431, 434, 126 N. W. 2d 52.

However, the claim of Peabody is made under the bond, and the bond provides its own definition of who is a "claimant" under the bond. Section 1, Labor and Material Payment Bond, provides as follows:

"A claimant is defined as one having a direct contract with the Principal or with a sub-contractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, . . ."

Peabody clearly comes within the bond's definition of "claimant" as "one having a direct contract . . . with a sub-contractor." Appellants contend that, nonetheless, Peabody ought not be permitted to recover under the bond because it is not entitled to a lien under the statute. In cases relied upon by appellant, this court was dealing with bonds that used words and phrases also found in the lien statute. In interpreting the meaning and limits of such bonds, this court refused to give them a more expansive meaning or limits than that set forth in the lien statute.[6] But that was in the absence of an agreement to the contrary, clearly set forth in the bond itself.[7] In the present case, there was such specific agreement to the contrary in the bond, and the bond can be enforced, even though recovery could not be had under the lien statutes.[8] Where the bond is clearly broader than the

[6] *Fidelity & Deposit Co. v. Milwaukee-Western Fuel Co.* (1927), 191 Wis. 499, 210 N. W. 713; *Southern Surety Co. v. Metropolitan Sewerage Comm.* (1925), 187 Wis. 206, 201 N. W. 980; *Wisconsin Brick Co. v. National Surety Co.* (1917), 164 Wis. 585, 160 N. W. 1044; *Gilson Brothers Co. v. Worden-Allen Co., supra.*

[7] *See: Gilson Brothers Co. v. Worden-Allen Co., supra,* stating at page 350: ". . . Under the law of this state, a principal contractor doing public work, *in the absence of an agreement to the contrary,* is not liable to the subcontractor of a subcontractor, merely because of that relationship, . . ." (Emphasis supplied.)

[8] *Hunter Machinery Co. v. Southern Surety Co.* (1927), 193 Wis. 218, 222, 214 N. W. 613, holding: "There is no doubt but that the bond can be enforced according to its terms, and that if the bond is broader than the terms of the lien statutes recovery may be had

statute requires, claims not "lienable" under the statute can be recoverable under the bond.[9] That is the situation here, and Peabody can recover under the terms of the bond even though it could not recover under the lien statutes.

*Notice under the bond.*

Appellant contends that Peabody did not give the ninety-day notice required by the bond "after such claimant . . . furnished the last of the materials for which said claim is made." This is certainly the closest question raised on this appeal.

It is conceded by appellants that Peabody did give notice (by certified mail) on November 15, 1967. The only issue raised as to such notice is whether it was within the ninety-day period after the last of the materials had been furnished to the Elkhorn school project.

The trial court found that various materials were shipped by Peabody at various times to American Products for installation at Elkhorn, including shipments on May 25, 1967, June 7, 1967, and September 5, 1967. The trial court found the September 5th shipment was ". . . in the nature of 1,000 cover caps, . . . supplied for installation in the Elkhorn High School."

The September 5th shipment is needed to put the notice by Peabody within the ninety-day notice requirement. There is no question that the 1,000 cover caps were sent to American by Peabody. (Peabody's invoice number H–2019 so indicates.) However, the caps were sent to American at Kenosha, not Elkhorn, and the

---

thereon, even though recovery could not be had under the lien statutes. . . ."

[9] *Knuth v. Fidelity & Casualty Co.* (1957), 275 Wis. 603, 609, 83 N. W. 2d 126, holding: ". . . Even in the case of a bond given pursuant to sec. 289.16 (1), if its terms are substantially broader than the statute requires, it will be construed to cover claims not 'lienable' under the statute. . . ."

question is whether the plaintiff here has established that the shipment was installed on the Elkhorn job, or even arrived at the Elkhorn jobsite. It is not enough that a supplier demonstrate that he furnished materials; it must also be established that the materials were in fact used on the construction project.[10]

On this narrow but critical issue, an employee of Peabody, William Jennings, testified that he did not know if the material was used on the Elkhorn job, stating that, as far as he knew, the cover caps could still be in Kenosha. The vice-president of Cullen, Irwin K. Hartman, testified that the seats were inspected to make sure the job was complete prior to paying American on July 7, 1967. However, he indicated he did not specifically look for missing cover caps, and they could have been, on that date, uninstalled. On the side of indicating the cover caps were installed at the Elkhorn site, there is the testimony of former president of American, E. Patrick Murphy, that all materials supplied by Peabody were installed in the Elkhorn school. Clearly the trial court believed this testimony for it is the only direct testimony that the September 5th shipment of cover caps got to the school building site.

Whatever this court might have done if all or any of its members were trying the case at the trial level, we deal now, on appeal, with a definite finding of fact made by the trial court. Such finding is not to be upset on appeal unless it is "contrary to the great weight and clear preponderance of the evidence." [11] This does not mean the evidence in support of the finding must "constitute the great weight or clear preponderance of the evidence." [12] Nor is it sufficient for reversal that

[10] *Brown & Haywood Co. v. Trane* (1897), 98 Wis. 1, 73 N. W. 561.

[11] *Mitchell v. Western Casualty & Surety Co.* (1966), 30 Wis. 2d 419, 421, 141 N. W. 2d 212.

[12] *Id.* at page 421.

"there is evidence to support a contrary finding." [13] Rather, "to command a reversal" such evidence in support of a contrary finding must itself "constitute the great weight and the clear preponderance of the evidence." [14] Given this standard, heavily weighted on the side of sustaining trial court findings of fact in cases tried without a jury, we sustain the finding of the trial court that September 5, 1967, was the last date on which material was furnished by Peabody to the Elkhorn school site. Similarly, the record is sufficient to sustain the trial court's finding that the 1,000 cover caps were a material portion of the original order and not a replacement shipment. Peabody, having standing to bring the action, being a proper claimant under the terms of the bond, and having complied with the ninety-day notice requirement, is entitled to recover under the terms of the bond, as the trial court correctly held.

*By the Court.*—Judgment affirmed.

---

[13] *Id.* at page 421.
[14] *Id.* at page 421.