IN RE ESTATE OF JONES, Deceased: JONES, Appellant, v. JONES, Respondent.

*No. 75–136. Argued October 4, 1976.—Decided November 30, 1976.*
(Also reported in 247 N. W. 2d 168.)

608

For the appellant there were briefs by *Cross, Karch & Wagner,* and oral argument by *Frederick Wagner,* all of Baraboo.

For the respondent there was a brief by *Conway, Conway & Conway,* and oral argument by *Vaughn S. Conway,* all of Baraboo.

ROBERT W. HANSEN, J. Appellant challenges the trial court finding that the will of Theodore Jones was not made in contemplation of marriage and was therefore revoked by the subsequent marriage of the testator.

■ Under existing law in 1958, a subsequent marriage of a testator, without issue, did not revoke a will earlier made.[1] However, in 1971, the legislature changed the consequence of a subsequent marriage. The statute then enacted, sec. 853.11, Stats., and made applicable to the will of any testator dying on or after April 1, 1971, instead provides in pertinent part:

*"SUBSEQUENT MARRIAGE.* A will is revoked by the subsequent marriage of the testator if the testator is survived by his spouse, unless:
"(a) The will indicates an intent that it not be revoked by subsequent marriage or was drafted under circumstances indicating that it was in contemplation of the marriage or makes provision for issue of the decedent."

In the case before us, the will itself neither indicates an intent that it not be revoked by subsequent marriage nor contains provision for issue of the decedent. So the sole question becomes whether or not it was "drafted under circumstances indicating that it was in contemplation of the marriage."

■ The trial court found the will here involved was not drafted under such circumstances. This trial court finding of fact and a determination based thereon must be sustained on appeal unless such finding of fact is against the great weight and clear preponderance of the evidence.[2] Our court has held that this does ". . . not mean the evidence in support of the finding must 'con-

[1] *See: Will of Wehr,* 247 Wis. 98, 18 N.W.2d 709 (1945).

[2] *Peabody Seating Co. v. Jim Cullen, Inc.,* 56 Wis.2d 119, 127, 201 N.W.2d 546, 551 (1972). *See also: Will of Winnemann,* 272 Wis. 643, 645, 76 N.W.2d 616, 617 (1956), citing *Will of Dobson,* 258 Wis. 587, 590, 46 N.W.2d 758, 760 (1951).

stitute the great weight or clear preponderance of the evidence.' "[3] Nor is it sufficient for reversal that " 'there is evidence to support a contrary finding.' "[4] Rather, to command a reversal, such evidence in support of a contrary finding must itself " 'constitute the great weight and clear preponderance of the evidence.' "[5] This standard, our court has stated, is "heavily weighted on the side of sustaining trial court findings of fact in cases tried without a jury."[6] It is thus the standard to be applied here.

On the question of testator's intent, the only testimony as to the circumstances surrounding the drafting of the will was given by its scrivener, Attorney Roland W. Vieth, who drafted the will. That attorney testified as follows: He met with testator in January or February, 1958, to discuss drafting a will. He again met with testator the day the will was drafted. At that time the scrivener "was under the impression that he [the testator] had just become married, not that he was contemplating marriage." He thought he was aware that the testator had been divorced from his first wife, but that he was not sure that he was divorced and not living with the first wife.

He testified that testator instructed him to draw a will which would limit "his wife's" share to the legal minimum. He never asked testator if he had a wife at the time of drafting the will. The scrivener consulted another attorney with respect to limiting the wife's share because it was "the first time that I had ever been asked to draft a will where the question arose of how much a wife, or widow could be limited to re-

---

[3] *Id.* at 127, 201 N.W.2d at 551, quoting *Mitchell v. Western Casualty & Surety Co.*, 30 Wis.2d 419, 421, 141 N.W.2d 212, 213 (1966).

[4] *Id.* at 127, 201 N.W.2d at 551.

[5] *Id.* at 128, 201 N.W.2d at 551.

[6] *Id.* at 128, 201 N.W.2d at 551.

ceive. . . ." He probably would have made no provision in the will for the wife if at the time he had believed the testator and his first wife were divorced.

Mr. Vieth testified that subsequently, in drafting wills to limit a wife to an elective share, he has specifically included a limiting provision in the will to avoid any misunderstanding. He admitted that testator, in seeking to give a minimum share to his wife, may in fact have been referring to his divorced wife. He had no notes or memoranda concerning his meetings with testator, and was testifying solely from recollection of the events occurring seventeen years prior to the court hearing. He could be wrong in his recollections.

█ This testimony was confusing if not inconsistent in certain particulars. The trial court was faced with evaluating the credibility of the witness, the weight to be given his testimony, and the inferences to be drawn therefrom. As the trial court's function is to determine the facts and to weigh them, so, too, " 'the inferences to be drawn from established facts are for the trier of the fact' "—here the trial court.[7]

In the case before us it was reasonable to infer from the scrivener's testimony, supported by undisputed facts as to subsequent marriage and the will remaining unchanged, that the testator, in seeking to provide only a minimal "wife's share" in his will, was referring to his wife-to-be, not to his divorced first wife. With such inference drawn, the finding of fact would have to be that this will was drafted in contemplation of marriage. However, we also find it reasonable to infer from the scrivener's testimony that the reference by testator to a minimal "wife's share" was a reference to his divorced first wife, not his wife-to-be. Drawing such inference

[7] *Estate of Beale,* 15 Wis.2d 546, 557, 113 N.W.2d 380, 385 (1962), quoting *Estate of Miller,* 265 Wis. 420, 424, 61 N.W.2d 813, 815.

from the testimony, as the trial court apparently did, warrants the finding of fact was that this will was *not* drafted in contemplation of marriage.

When inferences from testimony reasonably can go either way, this court must adopt the view taken by the trial court.[8] That the testimony may have also sustained a finding contrary to that made by the trial court does not give this court the right to disturb the inferences drawn and findings made by the trial court.[9] Rather, we are constrained to "indulge all reasonable inferences from the evidence which will support the trial court's decision."[10] Applying this standard we find the inference drawn by the trial court to have been reasonable and the finding of fact and conclusion of law made by the trial court to be proper.

*By the Court.*—Judgment affirmed.

---

[8] *Id.* at 557, 113 N.W.2d at 386, the court stating: "While the present facts permit the inference urged by appellant they do not compel that inference in opposition to the one drawn by the trial court. . . ."

[9] *Id.* at 557, 113 N.W.2d at 385, quoting *Drott Tractor Co. v. Kehrein,* 275 Wis. 320, 323, 81 N.W.2d 500, 502 (1957).

[10] *Estate of Lambert,* 252 Wis. 117, 123, 31 N.W.2d 163, 166 (1948). *See also: Madison v. State,* 64 Wis.2d 564, 570, 219 N.W.2d 259, 262 (1974), holding: ". . . the judgment of an appellate court is not to be substituted for that of the trier of fact unless the evidence is inherently or patently incredible."