KOEHRING COMPANY, Appellant, v. GLOWACKI, Respondent.

*No. 75-222. Submitted on briefs March 30, 1977.—*
*Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 64.)

498

500

For the appellant the cause was submitted on the briefs of *Thomas R. Fahl* and *Brendel, Flanagan & Sendik, S. C.* of Wauwatosa.

For the respondents the cause was submitted on the brief of *Jerry R. Albert, Timothy J. Strattner* and *Murphy, Shapiro, Gorsky & Dubin,* all of Milwaukee.

ROBERT W. HANSEN, J. The trial court held (1) there was no valid written contract between plaintiff and defendant for the sale of the surplus machinery; and (2) there was no principal-agent relationship between defendant and one William Garland which would bind defendant by Garland's acceptance of the machinery involved.

As to the exchange of telegrams upon which plaintiff relies to establish a contract, the trial court in its memorandum opinion found:

"On February 5, 1971, defendant sent a telegram to plaintiff 'confirming our bid $16,500.00 FOB our truck your plant loaded.'
" . . .

"Plaintiff's telegram of February 9, 1971, made its acceptance of defendant's $16,500.00 offer expressly conditioned upon terms of sale which were the direct opposite of defendant's offer of 'FOB our truck your plant loaded.' The February 9, 1971, telegram of plaintiff

stated, 'Note conditions of sale which call for "all machines are to be sold on an as is-where is basis." '

". . . 'FOB our truck your plant loaded' meant plaintiff was to bear the expense and risk of putting the goods into the possession of the carrier. . . . 'as is-where is basis' meant that the defendant would have to bear the expense and risk of putting the goods into the possession of the carrier. . . . [T]he loading costs would be substantial no matter whose testimony is to be accepted."[1]

The trial court noted that the language in plaintiff's telegram differed substantially from the offer contained in defendant's telegram or offer. Therefore, the trial court concluded, the plaintiff's reply telegram was ". . . a rejection of the offer and a counteroffer unless the difference in language is saved by reason of the operation of section 402.207 of the Wisconsin Statutes." That statute addresses the matter of additional terms or terms different from those offered or agreed upon, and provides that additional terms are to be construed as proposals for addition to the contract unless they materially alter it.[2]

---

[1] The testimony at trial established that the loading costs here involved were substantial on a $16,500 contract. Plaintiff's employee Ebersole testified that the expense of loading the nine items of machinery would run in the neighborhood of $1,200. Defendant testified the cost would be $2,000 to $2,100.

[2] Sec. 402.207, Stats., entitled *Additional terms in acceptance or confirmation*, provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a) The offer expressly limits acceptance to the terms of the offer;

In a fairly recent case, the *Air Products Case,* this court dealt with whether a disclaimer or limitation of liability clause in an "acknowledgment of order" materially altered the agreement of the parties.[3] However, that case dealt with an exchange of printed forms, not an exchange of telegrams which represented bargaining positions as in the instant case. Thus the full language of sec. 402.207(1) applied in the *Air Products Case,* whereas in the instant case we elect to apply only the language after the comma of sec. 402.207(1) which provides: "unless acceptance is expressly made conditional on assent to the additional or different terms."[4]

"(b) They materially alter it; or

"(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(*3*) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code."

[3] *Air Products & Chemicals, Inc. v. Fairbanks,* 58 Wis.2d 193, 206 N.W.2d 414 (1973).

[4] *See:* White and Summers, *Uniform Commercial Code* (hornbook series 1972), page 31, the authors stating: "In this type of case [*Note:* non-form as in the case before us] there is no pattern, or at least no continuous pattern of exchange of printed forms [as in *Air Products*]. One party may send a typewritten one. The parties may initially exchange printed forms that differ so substantially that the second cannot be an acceptance; then one party responds further with a letter or typed form or some such, yet the parties never write down their agreement in one document. If one of the parties walks away, or worse yet, if both perform and then something goes wrong, is there a contract? If so, what are its terms? We believe that all such cases will continue to be resolved under general contract law via section 1-103 and that only that part of 2-207(1) after the comma is relevant."

Additionally, in the case before us, there was no prior oral agreement between the parties. If that were the situation and the exchanged telegrams merely confirmed that fact, then we would look to sec. 402.207(2), Stats., as was done in *Air Products,* to determine whether to include the additional or different terms.[5]

As the trial court properly held in the present case, before we reach the question of additional or different terms added to a contract, we must first inquire whether or not any contract ever existed. Here the defendant's telegram was an offer to purchase at a price of $16,500 "FOB, our truck, your plant, loaded." Plaintiff's response was a counteroffer to sell at the price of $16,500 on an "as is, where is" basis. There was no "meeting of the minds" or agreement of the parties prior to the exchange of telegrams. No such "meeting of the minds" or agreement resulted from the exchange of telegrams. This being so, we do not reach the issue as to whether additional or differing terms do or do not destroy an agreement of the parties since there is no valid contract in the first place.

In the case before us, we deal with an initial and continuing absence of agreement between the parties as to whether the sales price included loading risks and costs. The second telegram of defendant, offering $16,500 "FOB, our truck, your plant, loaded," was an offer. The responding telegram of plaintiff, all tools sold on an "as is,

---

[5] *Air Products & Chemicals, Inc. v. Fairbanks, supra,* n. 3, at 213, this court holding: "If they [the disclaimer added] materially alter what would otherwise be firmed by the acceptance of an offer, they will not become terms unless the buyer expressly agrees thereto. '. . . If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time.' Comment 3 to sec. 2–207."

where is" basis, while labeled an acceptance, was actually a rejection of the defendant's offer and a counteroffer.[6] This being the situation, it follows, as the trial court concluded, that there was here no contract or agreement between these two parties either preceding or derived from their exchange of telegrams.

As a separate and independent basis for recovery, plaintiff asserts that the relationship of principal-and-agent existed between the defendant and William Garland, who accepted the surplus machinery involved. As to whether Garland was such agent for the defendant when he received and accepted the items involved, the trial court made the following finding of facts:

"Koehring's employee, Ebersole, testified that four or five days after February 9, 1971, he initiated a telephone call to Glowacki. It appears that the primary purpose for such telephone call was to ask Glowacki to sell back a designated piece of equipment. As a part of that telephone conversation, Ebersole testified that Glowacki asked if Garland could take photographs of the equipment and also stated that Garland would remove the equipment from Koehring's plant.

"Koehring's employee Kiess, testified that in late February or early March he initiated a telephone call to Glowacki concerning the removal of the equipment, and at that time Glowacki advised him that Garland would be in to remove the equipment.

"The above testimony is the only testimony offered concerning any representations made by Glowacki to Koehring about Garland."

The trial court then stated: "This court can find nothing in the two telephone conversations with Koehring's employees which would justify a belief that Garland was authorized to perform any of the acts of acceptance as set forth in section 402.606." The reference is to the

---

[6] See, e.g., Restatement of *Contracts*, sec. 60 (1932), which common law rule is applicable to this case by operation of sec. 401.103, Stats.

statute which defines what constitutes "acceptance of goods."[7] The definition is applicable to the phrase "received and accepted" in the statute which establishes an exception to the requirement that certain contracts be in writing.[8]

The trial court also found, as a finding of fact, that the deposition of Garland establishes that Garland with great consistency considered himself to be a purchaser of the equipment rather than an agent of Glowacki. An independent examination reveals that Garland's testimony does support the theory that he thought he was purchasing the equipment from Glowacki. The trial court further determined that as between Glowacki and Garland there was never any agreement that Garland would act as Glowacki's agent, finding that Koehring made delivery of the goods as a seller and Garland received and accepted the goods as a buyer. Whereupon the trial court concluded: "These are the essentials of a contract, but it is a contract between Koehring and Garland and one in which Glowacki [defendant] is not a party and, therefore, not liable."

Findings of fact of a trial judge are not to be disturbed on appeal unless they are against the great weight and clear preponderance of the evidence.[9] The above set forth findings of fact are not against such weight and preponderance, and are affirmed. With these findings of fact made, the trial court had sound support for concluding that Garland did not act as an agent for the defendant in accepting and receiving the surplus equipment delivered by plaintiff.

The plaintiff makes three claims as to the allegation of agency—that it was express, implied or apparent agency.

---

[7] Sec. 402.606, Stats.

[8] Sec. 402.201(3)(c), Stats.

[9] *Stueck v. Le Duc*, 57 Wis.2d 735, 741, 205 N.W.2d 139 (1973).

The test as to the elements necessary to support a finding of agency are different in the case of apparent agency,[10] from the elements required as to express or implied agency.[11] The trial court here set forth these requirement elements and analyzed the testimony in this record as it might apply to each such requirement element—first as to implied agency, then as to apparent agency. Thoughtful consideration was given to a variety of factors, including the fact that plaintiff delivered the goods without a bill of lading or arrangements for credit, and the fact that past transactions, including earlier transactions between plaintiff and Acme Engineering Company (defendant's employer) did not establish the required agency. We do not find any of such detailed consideration inappropriate, but we take the shorter route to hold that the findings of fact of the trial court, here affirmed on appeal, negative not only some, but all of the required elements for a finding that Garland acted as agent for defendant in receiving and accepting the machinery in question.

Accordingly, with those findings of fact not found to be against the great weight and clear preponderance of the evidence, the conclusion of law is compelled that this defendant is not liable to this plaintiff in this cause of action because: (1) There was no valid written contract between these parties; and (2) there was no principal-agent relationship between this defendant and Garland, the actual purchaser.

*By the Court.*—Judgment affirmed.

[10] *See: Vandervest v. Kauffman Pizza, Inc.,* 60 Wis.2d 230, 245, 208 N.W.2d 428 (1973).

[11] *See: Peabody Seating Co. v. Jim Cullen, Inc.,* 56 Wis.2d 119, 123, 201 N.W.2d 546 (1972).