PRESTON, and wife, Plaintiffs-Appellants, v. SCHAEFER, and wife, and another, Defendants-Respondents.

Supreme Court

*No. 76–399. Argued February 27, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 794.)

For the appellants there was a brief by *John A. St. Peter* and *St. Peter Law Offices* of Fond du Lac, and oral argument by *John A. St. Peter.*

For respondents Joseph and Marion Schaefer there was a brief by *Daniel P. Anderson* and *Anderson & Anderson, S.C.,* of Plymouth, and oral argument by *Daniel P. Anderson.*

For respondent Gottsacker Real Estate Company, Inc., there was a brief by *William W. Moir, III* and *Miller, Hayes & Werner, S.C., of* Sheboygan, and oral argument by *Mr. Moir.*

DAY, J. This is an appeal from a judgment of the circuit court for Sheboygan County, the Honorable Allan J. Deehr, presiding, entered December 30, 1976, denying recovery to the plaintiff-buyers for alleged misrepresentation in the sale of a farm, except for $300 to replace living room drapes.

The questions on appeal are:

1. Was the finding by the trial court that the defendant-sellers did not misrepresent the number of tillable acres against the great weight and clear preponderance of the evidence?

2. Was the finding by the trial court that the defendant-sellers did not misrepresent the capacity of the manure pits against the great weight and clear preponderance of the evidence?

3. Did the trial court properly dismiss the defendant real estate company from the case at the close of the plaintiff-buyers case?

This action was brought by James Preston and Dorothy Preston, his wife, to recover damages which they allege they sustained because of misrepresentations made by Joseph Schaefer and Marion Schaefer, his wife, and Gottsacker Real Estate Company, Inc., as to land purchased by the Prestons from the Schaefers.

The Prestons were dairy farmers in Manitowoc County when they became aware that the Schaefer farm was for sale through an advertisement in a farm magazine. They responded to the advertisement, contacting Mr. William Kleiber, a real estate salesman for Gottsacker Real Estate Company which had the listing contract for the farm. The Prestons viewed the Schaefer farm that evening. The Prestons visited the farm on six other occasions after the first visit, and had an opportunity to walk over the land in daylight hours.

The Schaefers and the Prestons negotiated over the purchase for a period from late July until October of 1973 when the sale finally took place. The sales brochure represented that of the 176 acre farm, 130 acres were tillable. It also stated that the farm had two thirty-one by twelve feet liquid manure pits having a capacity of 68,000 gallons each. This was represented as sufficient capacity to handle waste from 250 head of cattle for sixty days.

The Prestons allege that the farm has only eighty tillable acres, and that the manure pits have a holding capacity of only thirty days. During the negotiations, Mr. Preston raised his concern that there were not 130 tillable acres on the farm as represented. As defined by Mr. Preston, tillable land is land which can be plowed and which can yield a crop. At the time the Prestons bought the farm, the fifty acres of low land alleged not to be tillable were planted with Reed's Canary Grass.

At one point, Preston broke off negotiations because it did not seem to him that the fifty acres planted with canary grass were tillable. Mr. Kleiber then re-contacted him and asked if he and Mr. Schaefer could show him that there were in fact 130 tillable acres. Schaefer and Kleiber visited the Prestons at their farm in Reedsville and pointed out the location of the acreages on a map. The Prestons testified that Mr. Schaefer marked in the tillable acres on the map. Mr. Kleiber testified that Mr. Schaefer made some markings on the map, but that other markings were already there from the U. S. Department of Agriculture Stabilization and Conservation Service. (ASCS) Mr. Schaefer denied making any markings on the map.

As a result of this meeting with Mr. Kleiber and Mr. Schaefer, the Prestons decided to buy the farm. Mr. Preston testified that he relied on Mr. Schaefer's representations as to the acreage and the capacity of the manure pits. Schaefer had told him that the pits would hold manure from 250 head for sixty days.

Mr. Preston conceded at trial that Mr. Schaefer had told him that the disputed fifty acres might need drainage. Mr. Preston also stated that he had made no effort to open the drainage ditch. He testified that he had been informed by employes of the soil conservation agency that the ditch could not be successfully reopened.

Mr. Schaefer testified that he began working the disputed fifty acres as cropland in 1950, and that he had to break it up, plow it, harrow it, and put in a drainage ditch. The ditch drains into the Sheboygan River. Mr. Schaefer stated that he had had to reopen the ditch about three times. The record shows that the ditch was maintained open until about 1968.

From 1950 to 1968, Mr. Schaefer testified that he had crops such as field peas, sweet corn, field corn and flax on the disputed fifty acres. All of these crops required tilling and extensive work with tractors. From 1968 to 1973, Mr. Schaefer planted Reed's Canary Grass because the ditch had become clogged. The ditch ran through a neighbor's field where the neighbor pastured his cattle, and the cattle would walk through the ditch causing it to clog.

Mr. Schaefer testified that canary grass is worked like any other crop, and that he had used some of the crop to feed young stock, some for bedding, and had sold some to contractors for concrete cover.

Mr. Schaefer testified that the fifty acres probably could not now be worked until the ditch is reopened. He said that he had discussed with Mr. Preston what had to be done to reopen the ditch. He also testified that the ASCS lists the land as tillable. Mr. Schaefer testified that had he continued in farming he probably would have reopened the ditch noting that he had a new neighbor with whom he could get together on the ditch problem.

There was expert testimony from Donald Steege who held B.S. degrees in soils and agronomy, and also had extensive experience as a farmer, realtor, and cattle broker. In addition, he was on the faculty of University of Wisconsin-Extension for Calumet and Sheboygan counties. He testified that in his opinion the disputed soil was tillable. He defined tillable acreage as acreage

capable of producing cultivated crops with proper management procedures.

According to Mr. Steege, Reed's Canary Grass is a perennial crop with multiple uses. If cut young enough, it can be used as heifer feed. Although not in the same class as alfalfa, it does provide roughage. If chopped, it is excellent material for bedding. Although he did not consider canary grass to be a cash crop, he said it could be harvested three or four times a year. The more often it is harvested, the more nutritious it is, Steege testified.

On the issue of manure pits, Mr. Steege testified that the amount of waste depended on a number of factors including the size of the animals, the moisture content of the feed, the weather, the amount of water runoff from the milking parlor and the eaves, and the periods of time that the animals were allowed to run free. In his opinion, variation in these factors could be so great as to account for a difference of thirty days in the holding capacity of the pits.

Mr. Schaefer testified that he explained to Mr. Preston how to operate the pits and that he told that as a rule of thumb "anything you put in the pits has to come out." In Mr. Schaefer's experience, the pits had a holding capacity of sixty days. Mr. Preston testified that he found that the pits would fill up after only thirty days.

QUESTION #1: WAS THE FINDING BY THE TRIAL COURT THAT DEFENDANT-SELLERS DID NOT MISREPRESENT THE NUMBER OF TILLABLE ACRES AGAINST THE GREAT WEIGHT AND CLEAR PREPONDERANCE OF THE EVIDENCE?

■■■■■

Trial in this case was to the court. Findings of fact by the trial court will not be upset on appeal unless they are against the great weight and clear preponderance

of the evidence. The evidence supporting the findings of the trial court need not in itself constitute the great weight or clear preponderance of the evidence; nor is reversal required if there is evidence to support a contrary finding. Rather, to command a reversal, such evidence in support of a contrary finding must itself constitute the great weight and clear preponderance of the evidence. *In re Estate of Jones,* 74 Wis.2d 607, 611, 247 N.W.2d 168 (1976). In addition, when the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. *Gehr v. Sheboygan,* 81 Wis.2d 117, 122, 260 N.W.2d 30 (1977). When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Id.*

The finding of the trial court that the fifty acres were tillable is not against the great weight and clear preponderance of the evidence. That parcel of land had produced crops of sweet corn, peas, field corn, and flax up until 1968. Since that time, canary grass has been grown on that land. There was expert testimony that Reed's Canary Grass is a crop with value as a feed and animal bedding. There was also testimony that canary grass can be used by contractors as a cover for concrete to keep it from freezing.

There was evidence that Mr. Preston was aware of the problems with the drainage ditch. Mr. Schaefer testified that he told Mr. Preston what had to be done in order to reopen the ditch. Mr. Preston conceded that Mr. Schaefer told him that the fifty acres might need drainage. Mr. Schaefer testified that the ditch could be reopened.

Further, there was testimony that the ASCS considered the land to be cropland. The Prestons assert that the

Schaefers hid behind pre-1968 ASCS maps and studies. However, there was testimony that as recently as 1976, the ASCS considered 134 acres of the 176 acre parcel to be cropland.

The Prestons assert that they should be granted a new trial under sec. 251.09, Stats. 1975, arguing that there has been a probable miscarriage of justice.

Sec. 251.09, Stats. 1975, provides:

"251.09. **Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

The Prestons argue that the trial court failed to take into account Mr. Schaefer's statement that the land probably could not be worked unless the drainage ditch were reopened, when it found that the representation of the tillable acreage to be accurate.

The issue was not whether the acres were tillable at the time of trial, but whether Mr. Schaefer misrepresented the fifty acres during the negotiations with the Prestons.

The Prestons were aware that Mr. Schaefer was growing canary grass during the time of negotiations, and that the drainage ditch was not operating at that time. Mr. Preston testified that he had not tried to reopen the ditch

since buying the farm. Further, there was testimony that the ditch could be reopened.

There was also testimony that canary grass is a useful crop, and that the muck soil of the disputed fifty acres is valuable for raising crops such as corn.

The Prestons urge that the real issue—the operability of the drainage ditch has not been tried. This is not the case. There was controversy at trial as to whether the ditch could be reopened or not, but credibility of witnesses is for the trier of fact.

Before this court will exercise its discretion to reverse on the basis of sec. 251.09, Stats., ". . . it must be convinced that there has been a miscarriage of justice. This means . . . the evidence and the law must be such that the plaintiff probably should have won and should therefore be given another chance." *Savina v. Wisconsin Gas Co.*, 36 Wis.2d 694, 704, 154 N.W.2d 237 (1967) ; *Lorenz v. Wolff*, 45 Wis.2d 407, 414, 173 N.W.2d 129 (1970).

In *Lorenz, supra,* the court also said that exercise of its discretion under sec. 251.09 ". . . is not necessarily confined to such a mechanistic formula for the determination of whether justice has miscarried," noting that the statute also provides for a discretionary reversal when it is "probable that justice has for any reason miscarried." *Id.* at 414, 415. However, in *Lorenz* the court applied this exception from the general rule because improper conduct by the defense attorney made a fair trial impossible. There is no such misconduct in the instant case.

There is nothing in this record to show that the real issue was not tried in this case, and a discretionary reversal is not warranted.

QUESTION #2: WAS THE FINDING BY THE TRIAL COURT THAT THE DEFENDANT-SELLERS DID NOT MISREPRESENT THE CAPACITY OF THE MANURE PITS AGAINST THE GREAT WEIGHT AND CLEAR PREPONDERANCE OF THE EVIDENCE?

The Prestons do not contend that Mr. Schaefer misrepresented the physical dimensions of the manure pits. It is undisputed that the pits were thirty-one by twelve feet, with a capacity of 68,000 gallons each.

There was expert and lay testimony that a number of factors affected the rate at which the manure pits filled up—the moisture content of the feed, the weather, the amount of water used in the milking operation, and whether the animals were permitted to run free for a period of time. Mr. Steege testified that these variables could result in a thirty day difference in the holding capacity of the pits.

In view of this testimony, the trial court was justified in finding that while the pits did not have a sixty day capacity as used by the Prestons, there was no misrepresentation on the part of the Schaefers. There was evidence in the record that Mr. Schaefer was able to get sixty days use of the pits before they had to be pumped out.

QUESTION #3: DID THE TRIAL COURT PROPERLY DISMISS THE DEFENDANT REAL ESTATE COMPANY FROM THE CASE AT THE CLOSE OF THE PLAINTIFF-BUYERS CASE?

In view of the fact that we uphold the finding of the trial court that there was no misrepresentation on the part of the sellers, we find it unnecessary to treat the question of whether the trial court properly dismissed the

real estate company from the case at the close of the plaintiffs' case.

The respondents have requested double costs because of certain omissions in the Appellants' Appendix. Awarding of double costs is discretionary with this court and we do not regard the omissions of sufficient magnitude to warrant imposing the requested penalty.

*By the Court.*—Judgment affirmed.