LEHMANN TIRE & SUPPLY, INC., Plaintiff and Respondent, v. MASHUDA CONSTRUCTION COMPANY and another, Defendants and Respondents: MURRAY, Trustee in Bankruptcy, Defendant and Appellant.

*June 6—June 27, 1961.*

For the appellant there was a brief by *Brady, Tyrrell & Bruce,* and oral argument by *David L. MacGregor* and by *Roger P. Paulsen,* all of Milwaukee.

For the respondents there was a brief by *Clifford & Fitzpatrick* of Watertown, for the Lehmann Tire & Supply, Inc., and *Lehner & Lehner* of Princeton, for the Mashuda Companies and the Fidelity & Deposit Company of Maryland, and oral argument by *James A. Fitzpatrick.*

MARTIN, C. J.   The case was submitted to the circuit court on a stipulation of facts which shows:

Prior to May 1, 1958, the state of Wisconsin, by its highway commission, contracted with the Mashuda Companies for the construction and improvement of a highway in Columbia county. Among other things, the contract provided that the Mashuda Companies should pay all claims for labor and materials for the performance of the contract, as required by sec. 289.16, Stats. Defendant Fidelity & Deposit Company furnished a bond to Mashuda as required by said statute.

Mashuda let a subcontract to one Herbert A. Carlson to furnish and deliver road-building materials to the project. The plaintiff, Lehmann Tire & Supply, furnished Carlson with "tires and equipment, including tubes" which, it is stipulated, were "completely used and consumed by the said H. A. Carlson, subcontractor, in connection with the performance of his subcontract." Said items amounted to $1,784.01, of which $253.90 was paid, leaving an unpaid

balance of $1,530.11. On October 16, 1958, plaintiff filed a claim with the highway commission for the balance then due, complying with the notice requirements of sec. 289.53, Stats. Upon demand by the plaintiff, Carlson failed to pay the amount due; on February 5, 1959, Carlson filed his petition in bankruptcy and the appellant was appointed trustee.

The highway commission has in its possession certain funds due under its contract with Mashuda, which sums exceed the amount of plaintiff's claim. Plaintiff seeks to establish a lien under sec. 289.53, Stats., against said funds and obtain a judgment for the amount thereof. The appellant trustee in bankruptcy takes the position that the funds due under the contract should be distributed to the Mashuda Companies with direction to pay any amounts owed to the trustee for the benefit of the general creditors of Carlson.

Sec. 289.53 (1), Stats., provides, so far as material:

"Any person furnishing labor or materials to be used or consumed in making public improvements or performing public work (including fuel, lumber, machinery, vehicles, tractors, equipment, fixtures, apparatus, tools, appliances, supplies, electrical energy, gasoline, motor oil, lubricating oil, greases, premiums for workmen's compensation insurance, and the contributions for unemployment compensation) to any contractor (except in cities of the first class) shall have a lien on the money or bonds or warrants due or to become due the contractor therefor; provided the lienor, before payment is made to the contractor, gives written notice to the debtor state, county, town, or municipality of his claim. It shall withhold a sufficient amount to pay the claim; and when it is admitted by the contractor or established as provided in sub. (3), shall pay the same and charge it to the contractor. . . ."

Appellant argues that the term "any contractor" does not include subcontractors because an examination of the language of the statute, particularly with reference to its legis-

lative history, shows the intent to limit the term to the one who entered into the contract with the state and to whom the money is due.

The statute, as originally enacted in 1921, provided:

"Any person, firm, or corporation furnishing any material, apparatus, fixtures, machinery, or labor to *any contractor* for public improvements in this state, except in cities of the first class, however organized, shall have a lien on the money, or bonds, or warrants due, or to become due *such contractor* for such improvements, providing such person, firm, or corporation shall, before the payment is made to *such contractor,* notify the officials of the state, county, township, city, or municipality, whose duty it is to pay *such contractor,* of his claim by written notice. . . ."

There followed a number of amendments to the statute which enlarged the class of lienable items, and in 1945, by ch. 543, sec. 3, the reference to "any contractor" was followed by "the contractor" instead of "such contractor" and the language requiring notice to the "officials of the state . . . whose duty it is to pay such contractor" was changed to "notice to the debtor state."

The question whether the remedy of the statute is available to the supplier of a subcontractor has not been decided by this court. Cases and briefs in *Muller v. S. J. Groves & Sons Co.* (1931), 203 Wis. 203, 233 N. W. 88, show that it was presented in that case, but the opinion makes no mention of it. In view of the language used in the statute we cannot say that the court determined this matter. The primary question argued and the only question decided was whether the equipment and labor furnished to a subcontractor was of a lienable character. The trial court cited this case and commented that if the court had considered the relationship of the plaintiff to the general contractor such as would not entitle him to a lien, it would have disposed of the matter

on that ground. We cannot make that presumption. The briefs made very little of the matter, and there is nothing in the opinion to suggest that the court considered it.

Nor does certain language in *Gilson Bros. Co. v. Worden-Allen Co.* (1936), 220 Wis. 347, 354, 265 N. W. 217, compel the conclusion that the court gave sec. 289.53, Stats., the interpretation contended for by respondents. There the suit was brought under sec. 289.16 by the subcontractor of a subcontractor and the court, in holding that said statute provided no remedy for one in that relationship to the general contractor, pointed out that the action was "not brought under sec. 289.53, Stats., to establish or enforce a lien on funds held by the state." While the language is susceptible of the implication that the result might have been different had the case involved the application of sec. 289.53, it neither decided nor was meant to decide that point.

We must agree with the appellant that the meaning of the words in the original statute shows the intent to limit the persons entitled to a lien to those who have supplied lienable items to the general contractor. Under elementary rules of grammar the use of the word "such" limits the words "any contractor" to the contractor to whom money is due from the state. The statute also required that notice be given to those officials of the state "whose duty it is to pay such contractor." Any other interpretation does violence to the plain meaning of the words used.

While the language was changed in 1945, ch. 543, sec. 3 was specifically denominated a revision, not an amendment, and under sec. 990.001 (7), Stats., "A revised statute is to be understood in the same sense as the original unless the change in language indicates a different meaning so clearly as to preclude judicial construction." Substitution of the

word "the" for "such," in our opinion, indicates no clear intent to change the meaning of the original language. The definite article "the" also restricts the meaning of "any" contractor to the one who has the contract with the state.

The trial court observed that this interpretation renders a supplier such as the plaintiff a "forgotten stepchild of the law." And respondents argue that it would be a simple thing for subcontractors to go into bankruptcy and unjustly deprive laborers and materialmen from obtaining moneys due them under public contracts. The argument has little merit. If a subcontractor is insolvent, what has he to gain by "depriving" his supplier on a public improvement of rights as a preferred creditor? The bankrupt does not receive the money in any event.

The lien provided for in sec. 289.53, Stats., is impressed upon funds owing the contractor and still in the hands of the state. It may very well be that the contractor has already paid the subcontractor, which was the situation in the *Worden-Allen Case, supra.* Under such circumstances the contractor would be deprived of moneys due him because of the subcontractor's failure to pay the supplier.

This is a matter for legislation, not court decision. It involves considerations of public policy, and if the legislature had deemed it in the public interest to protect all suppliers of labor and materials on public improvements, it would have used language making that intent plain. Respondents rely on *Smith v. Jacksboro Stone Products Co.* (Tex. Civ. App. 1931), 41 S. W. (2d) 347, where the court, in construing language of a Texas statute, held the term "any contractor" included both the original and subcontractor. The Texas statute, while similar to sec. 289.53, is not the same and the court apparently considered the language open to construction whereas, in our opinion, sec. 289.53 is unambiguous.

In that state the statute on public contractors' bonds has also been construed to apply to furnishers of material to subcontractors, *Fennell v. Trinity Portland Cement Co.* (Tex. Civ. App. 1919), 209 S. W. 796, while our comparable statute, sec. 289.16, has been held not to include persons having that relationship to the general contractor. In any event, authority on the subject is divided. In Illinois, for example, the words "any contractor" in similar statutes have been held not to include subcontractors. *Alexander Lumber Co. v. Coberg* (1934), 356 Ill. 49, 190 N. E. 99.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.