BOEHCK CONSTRUCTION EQUIPMENT CORPORATION, Plaintiff and Respondent, v. VOIGT and others, Defendants and Respondents: HARTFORD ACCIDENT & INDEMNITY COMPANY, Defendant and Appellant.*

*May 2—June 5, 1962.*

* Motion for rehearing denied, without costs, on October 2, 1962, WILKIE, J., taking no part.

64

For the appellant there were briefs by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman,* all of Madison, and oral argument by *W. L. Jackman.*

For the respondents there were briefs by *Charles E. Richardson* and *Richardson & True,* all of Milwaukee, for the Boehck Construction Equipment Corporation; by *Arthur Magidson* and *Hersh & Magidson,* all of Milwaukee, for the Fountain City Supply Corporation; and by *Joseph A. Melli* of Madison, for the Reitan-Lerdahl & Company and the Hammersley Construction Company, Inc.; and oral argument by *Mr. Arthur Magidson, Mr. Charles E. Richardson,* and *Mr. Melli.*

For the respondents Paul Madigan, the Fox Lake Oil Company, the C. A. Porter & Company, and Henry J. Will there was a brief by *Lueck & Skupniewitz* of Beaver Dam.

CURRIE, J. The following is a breakdown of the lien claims involved in this appeal, other than that of Hartford as assignee or subrogee of C. C. Linck and N. A. Elden:

| *Claimant* | *Conceded as valid by Hartford* | *Disputed* | *Total allowed by trial court* |
| --- | --- | --- | --- |
| Sweeney Bros., Inc. | $1,275.00 | — | $ 1,125.16 |
| W. H. Peter and C. A. Porter, d/b/a Fox Lake Oil Co. | 3,946.04 | — | 3,946.04 |
| C. A. Porter & Sons, Inc. | — | $ 155.80 | 155.80 |
| Paul Madigan | 1,183.45 | — | 1,183.45 |
| Paul Madigan, as assignee of: Henry J. Will | — | 323.39 | 323.39 |

| | | |
|---|---|---|
| Beaver Ready Mix (no motion to review) | — | $ 51.37 | — |
| Reitan-Lerdahl & Co. (motion to review) | — | 1,778.27 | $ 500.00 |
| Hammersley Construction Co., Inc. | — | 3,013.00 | 3,013.00 |
| Boehck Construction Equip. Corp. | $500.00 | 3,714.35 | 4,214.35 |
| Leonard Cleland, d/b/a Triangle Trucking | 560.02 | — | 560.02 |
| Fountain City Supply Corp. | — | 2,122.72 | 2,122.72 |
| Total: | | | $17,143.93 |

On the basis of the circuit court's determination that Hartford's claim is junior in priority to the other allowed claims, Hartford would only be entitled to receive the balance of the $18,309.25 fund after the $17,143.93 of allowed claims, and the attorneys' fees, have been paid. On the other hand, if the disputed lien claims allowed by the circuit court should be held nonlienable on this appeal, Hartford would be entitled to receive reimbursement in full for its $4,848.16 expended.

The law is clearly established that the public-improvement lien provided by sec. 289.53, Stats., is not available to suppliers of a subcontractor of a party with a state contract for road construction or improvement. *Lehmann Tire & Supply v. Mashuda Construction Co.* (1961), 14 Wis. (2d) 176, 109 N. W. (2d) 650. Therefore, with the possible exception of Reitan-Lerdahl & Company, these claimants can only enforce a lien against the moneys due Voigt if there was an agency relationship between Voigt and Volck corporation so that, in effect, they were supplying Voigt as general contractor under his contract with the state.

While other issues are raised in the brief, we find it only necessary to pass upon these two questions:

(1) Is the finding of the circuit court, that Volck corporation was the agent of Voigt, against the great weight and clear preponderance of the evidence?

(2) Is defendant Reitan-Lerdahl & Company entitled to have its $1,778.27 claim for insurance premiums allowed as a lienable claim against the fund even though it is determined that Volck corporation was a subcontractor, rather than an agent, of Voigt?

## Agency.

Agency is a legal concept based upon the relationship between parties. Its presence or absence is dependent upon the existence of certain factual elements, which themselves are influenced by other less individually significant aspects of the total conduct of the parties. The initial such element is the express or implied manifestation of one party that the other party shall act for him. Once this is established, the next question is whether the relationship is that of agency or something else, such as principal and independent contractor. In the instant case, this latter question becomes determinative because the initial relationship was established by the contract between Voigt and Volck corporation for the quarrying and delivering of the crushed rock. Thus, in order for this court to uphold the circuit court's conclusion that Volck corporation was Voigt's agent, the evidence must indicate that the former was an agent and not an independent contractor. Therefore, the evidence bearing on the total conduct of the parties must be reviewed in light of the requisite factors of agency.

This court has pointed out that, while there are several factors to be taken into consideration in determining the question of whether a person is an agent or independent contractor, the most-important single indicium is who has retained the right to control the details of the work. *Bond*

*v. Harrel* (1961), 13 Wis. (2d) 369, 374, 108 N. W. (2d) 552. The testimony established that Voigt was at the quarry on an average of every other day. However, there was no testimony that, on such occasions, he ever issued any orders to Volck corporation, or any of its employees, regarding the operation of the quarry or the hauling of materials from the quarry to the highway project. As principal contractor, it would seem only natural that he would stop at the quarry frequently to check on the progress of operations, since his own progress under the state contract was dependent on the rate at which Volck corporation was able to supply the needed materials for the road base. Furthermore, as will be developed in reviewing the evidence adduced, there was an utter failure to establish that Voigt had any right to control the work of Volck corporation with respect to its quarry operations. Also, there was no showing made that Voigt ever attempted to exercise such control.

Another factor to be considered is whether the party agreeing to perform the service is engaged in a distinct occupation or business apart from that of the person who engages the services. Voigt and Volck corporation were engaged in distinct and separate businesses, the former being engaged in the contracting business having Route 4, West Bend, as his mailing address and the latter having its place of business at Sun Prairie in Dane county.

The evidence indicates that the quarry, from which Volck corporation extracted the crushed rock, had previously been leased by Madigan to Voigt under a written lease for a four-year term commencing December 4, 1956, whereby Madigan was to receive as rental 10 cents per cubic yard on all crushed rock removed from the quarry. This lease was only assignable on the consent of the lessor. Voigt turned his interest as lessee over to Fox Lake Stone Company (hereinafter the "Stone Company"), the three stockholders of

which were Voigt, his wife, and his mother. This corporation had operated the quarry prior to the commencement of the highway project.

At the trial two written agreements, both dated September 29, 1958, were received in evidence. One was executed between Voigt and Volck corporation in which the latter was designated as a subcontractor with respect to Voigt's highway contract with the state. This agreement required Volck corporation to furnish the crushed rock needed for the base course of the highway, and to deliver it to the site, in return for payment by Voigt of 98 cents per ton therefor. It further provided that the necessary rock material was to be procured by Volck corporation from the Stone Company "which has a quarry located near this project." The second agreement was between the Stone Company and Volck corporation. It provided that Volck corporation would procure the materials necessary for performance of its contract with Voigt from the quarry operated by the Stone Company; would move such equipment onto the quarry property as necessary to its operations; and would pay the Stone Company 10 cents per cubic yard for the material removed, which payment could be deducted from the payments due from Voigt to Volck corporation. It also provided that Voigt was to furnish the gasoline, oil, grease, and fuel oil for the equipment of Volck corporation, to keep a record thereof, and to deduct the value from his payments to Volck corporation.

Volck corporation quit without fully performing its contract with Voigt. Voigt purchased the remaining crushed rock necessary to complete the highway project from C. C. Linck for $4,244.16, and Hartford subsequently paid Linck's lien claim in this amount, along with N. A. Elden's claim of $604 for labor performed for Voigt.

Only three of the lien claims which Voigt admitted owing were concerned with the operation of the quarry and the

hauling of materials from the quarry to the highway project. These three claims were those of Paul Madigan, Fox Lake Oil Company, and Triangle Trucking. Madigan's claim was based on his quarry lease with Voigt calling for 10 cents per cubic yard for materials removed, which was a direct liability of Voigt's. Under Voigt's contract with Volck corporation, Voigt undertook to purchase all gasoline, oil, grease, and fuel oil used by Volck corporation's equipment, and Fox Lake Oil Company's lien claim is for furnishing such products to Volck corporation. The Triangle Trucking claim for $560.02 stands on a different basis. This claim is for providing two trucks which hauled crushed rock from the quarry to the highway project. Leonard Cleland, a sole proprietor operating as Triangle Trucking, testified that he made the arrangement for this use of his trucks by both Volck and Voigt. Why Voigt should have so obligated himself is not explained. However, this in itself did not establish Volck corporation as Voigt's agent with respect to the disputed claims of the other lien claimants.

In order to analyze the other relevant aspects to the conduct of the parties, as to its influence on the basic factors of agency, we deem it necessary to review the respondents' contentions in support of the agency finding.

Respondents contend, and the record shows, that Voigt was evasive and contradictory in his testimony. Nevertheless, there was no admission made by Voigt in his testimony which would tend to prove that Volck corporation was his agent in the transactions at hand. All respondents were contacted by Volck corporation. Thus, their contractual relationships only existed with Volck corporation, unless it is proved to have been acting as Voigt's agent. Therefore, the burden of proof is on respondents to prove agency, not upon Hartford or Voigt to disprove it.

Respondents place considerable reliance upon the testimony of Fay Hammersley, Jr., president of claimant Hammersley Construction Company, that his company did its work for both Volck corporation and Voigt and rendered its bills to both. However, a careful review of Hammersley's testimony makes it clear that Hammersley Construction Company dealt only with Volck corporation, or its president, R. J. Volck (hereinafter "Volck"). The work which the Hammersley Construction Company did at the quarry was the drilling of holes in the rock preparatory to blasting with explosives. Hammersley testified that Volck, and not Voigt, contacted his company to do the drilling work and that Volck supplied him with two written statements directing the number of holes to be drilled and their depth and diameter. This witness further testified that Voigt never contacted him. Therefore, the witness' statement, that the work was done for Voigt as well as Volck corporation, was a legal conclusion unsupported by any evidence. Likewise, the effect of his testimony, that Voigt as well as Volck corporation was billed for the work, was greatly weakened by the introduction as exhibits of carbon copies of the bills rendered. These bills were made out to "Bob Volck, Volck Sales & Service, Sun Prairie, Wisconsin," and then to the right of this and slightly lower there was typed "(Alvin Voigt—Contractor for Project)." This would indicate that only Volck or his company was actually being billed, even though copies of the bills may have been sent to Voigt.

Respondents also attempt to bolster their contention of agency by the testimony of Bert C. Weerts, president of claimant Fountain City Supply Corporation, which supplied the dynamite and caps for the blasting at the quarry. All delivery slips and invoices issued by this claimant were made out to "Volck Sales & Service." Weerts stated that the original order for the dynamite and caps was received over

the phone and that he "imagined" that it was from Volck corporation. He also testified that when he made the first delivery to the quarry both Volck and Voigt were there, and that "they" told him the crushed rock being produced at the quarry was to be used on state highways in Dodge county. Weerts further stated that he "understood the job was under bond" before he accepted the order, but failed to specify upon what this understanding was based or to whom he had talked about the matter of a bond. However, he admitted that prior to making delivery there had been no discussion about payment for the dynamite and caps. We conclude that Voigt's presence at the quarry when Weerts made delivery, and the fact that Voigt as well as Volck stated that the crushed rock produced at the quarry was being used on Dodge county highway projects, do not tend to establish agency between Volck corporation and Voigt.

Respondents point to the testimony of still another witness, C. A. Porter, apparently an officer of C. A. Porter & Sons, Inc., who furnished ammonium nitrate used in the blasting. Respondents' brief quotes this portion of Porter's testimony:

"We have always done business with Voigt. I don't know Mr. Volck. These tickets are all made out to the Volck Construction Company. We assumed Mr. Voigt was employed by Mr. Volck; we never knew anything different; we didn't know anything about any contract between Mr. Voigt and Volck. We had splendid relations with Mr. Voigt."

Porter further testified that he "couldn't say" whether the materials supplied to the quarry by his firm were ordered by Volck or Voigt. The "tickets" referred to by Porter, all of which were made out to "Volck Construction Company" are in evidence and are in reality invoices showing materials sold, and the amount of the sales price. It is significant that no invoices were rendered to Voigt by Porter's

company. Porter failed to state upon what he based his assumption that Voigt was employed by Volck. In any event, respondents contend that the actual employment situation was in reverse of this assumption.

The evidence also shows that plaintiff Boehck leased a power shovel and electric generator plant used in the quarry operations to Volck corporation. When payment was not forthcoming, plaintiff threatened to remove the leased equipment, but permitted the power shovel to remain at the quarry upon Voigt's promise to pay $500. There is no evidence that Voigt agreed to pay any other part of the indebtedness owing to plaintiff. In fact, plaintiff's credit manager, who was plaintiff's principal witness, testified that there were no dealings between plaintiff and Voigt other than this $500 transaction. However, he also testified that Voigt, among others, told him that the leased equipment would be used on a county trunk road in Dodge county, but did not testify as to when, where, or under what circumstances this statement by Voigt was made.

Respondent Henry Will had been operating a bulldozer for Voigt, and Voigt suggested he see Volck about engaging the services of Will's truck to haul crushed rock from the quarry to the highway project. Will testified that he went to see Volck and that Volck "hired me." Volck paid $100 on account to Will. Later, when Will's claim was in dispute, Voigt supplied by correspondence information as to certain credits for drivers' wages and gasoline which were to be deducted from Will's gross statement of account.

Harold B. Shier, president of Reitan-Lerdahl & Company, was contacted by Volck. He then went to Volck's Sun Prairie home and sold Volck corporation workmen's compensation insurance and liability insurance covering the operation of its trucks in connection with the quarrying and hauling of materials. Shier testified that, in the course

of the conversation, he asked Volck whether he needed a contractor's bond, and Volck replied "No, he was working for Mr. Voigt." It is well settled that agency cannot be established by admissions of the claimed agent made without the scope of his actual or implied authority. Restatement, 2 Agency (2d) p. 5, sec. 285; *Punke v. Brody,* ante, p. 9, 115 N. W. (2d) 601.

If the foregoing resumé of the evidence stood alone, we would have no hesitancy in holding it insufficient to establish that Volck corporation acted as Voigt's agent in incurring the indebtedness upon which respondents base their disputed claims. However, before reaching such a conclusion we must consider certain additional facts upon which the learned trial court grounded his finding of agency.

The first of these is that under Voigt's contract with the state, and also by reason of the requirement of sec. 66.29 (7), Stats., he was required to list all subcontractors with the state, and he failed to list Volck corporation as a subcontractor. While this breach of contract and violation of statute may have provided the highway commission with a basis for canceling Voigt's contract, we fail to see how this, standing alone, aids respondents' position. Had there been other evidence tending to establish Volck corporation as Voigt's agent, this might have some corroborating value as tending to show that Voigt must have considered Volck corporation to be an agent, otherwise he would have listed it as a subcontractor. However, we have found no such other evidence. Furthermore, the purpose of the requirement of listing subcontractors is not to protect the subcontractor's suppliers, but rather so the state can pass on the capability of the named subcontractors to perform that part of the contract to be sublet to them.

Next, there were two breaches of the written subcontract between Voigt and Volck corporation. This subcontract

required Volck corporation to furnish a $10,000 performance bond to protect its materialmen and subcontractors. It also required Volck corporation, as it received payments from Voigt, to supply the latter with receipts of payment or waivers from suppliers and subcontractors. Volck corporation never furnished the performance bond; nor did it furnish Voigt with receipts of payment or waivers from its suppliers and subcontractors when Voigt made payments. However, these omissions merely breached contract provisions which were for Voigt's own protection and which could be waived by him without subjecting himself to liability to the respondents.

This court has held that, where a statute requires a municipality to secure a performance bond from the contractor as a condition of entering into a contract with him, the municipality will be held personally liable to suppliers and subcontractors if no bond is provided. *Smith v. Pershing* (1960), 10 Wis. (2d) 352, 102 N. W. (2d) 765; *Cowin & Co. v. Merrill* (1930), 202 Wis. 614, 233 N. W. 561. This holding is grounded on the principle that the statute would be rendered ineffectual unless such liability is imposed where no bond is provided. However, this principle should not be extended to apply to the instant case where contractor Voigt inserted the bond provision in his subcontract with Volck corporation on his own volition, and not because of any statutory requirement.

The last fact of similar import is that the agreement between Stone Company and Volck corporation violated a provision in the 1956 quarry lease between Madigan and Voigt which prohibited assignment by Voigt without Madigan's permission. Madigan testified that he never received any notice of an assignment by Voigt, although in March or April, 1960, he did tell Voigt it would be satisfactory for the latter to sublease to someone else. We do not deem

the fact, that this quarry agreement with Volck corporation was made by Stone Company instead of by Voigt, is of any legal significance. This is because there was no reservation of control provided in the agreement. The breach of the assignment provision of the Madigan lease might afford Madigan a basis for canceling the lease, but again it has no direct bearing on the agency issue.

It must be conceded that these various failures to carry out terms of contracts and leases are suspicious circumstances which cast doubt upon the authenticity of the subcontract agreement entered into between Voigt and Volck corporation. However, a finding of agency must be supported by something beyond mere suspicion, and the burden of proof was on respondents to prove agency, not on Hartford and Voigt to disprove it.

There were other avenues of proof open to respondents which were not resorted to. Volck was never called as a witness. Voigt was never asked to produce his books and records showing statements rendered to him by Volck corporation or payments made to the latter. No employees at the quarry were called to testify as to any orders or directions that may have been given to them or to Volck in their presence by Voigt.

On the basis of the record before us, we determine that the finding, that Volck corporation was Voigt's agent with respect to the transactions out of which respondents' claims arose, is against the great weight and clear preponderance of the evidence.

### Claim of Reitan-Lerdahl & Company.

Because of our conclusion as to the lack of evidence to establish an agency relationship between Volck corporation and Voigt, Reitan-Lerdahl & Company's $1,778.27 claim for unpaid insurance premiums cannot be asserted against

the fund held by the state. Sec. 289.53 (1), Stats., which would have been authority for a $500 claim for unpaid workmen's compensation insurance premiums against the fund, does not benefit Reitan-Lerdahl & Company's position because this insurance was furnished to Volck corporation, which does not qualify as a "contractor" within the meaning of this statute as defined by this court in the *Lehmann Tire & Supply Case, supra.* However, even if an agency relationship had been established, the $1,278.27 of unpaid public liability insurance premiums would not have been lienable under this statute. This is because the statutory enumeration of lienable items expressly includes only premiums for workmen's compensation insurance. Therefore, the *expressio unius est exclusio alterius* canon of statutory construction precludes the judicial inclusion of other insurance premiums.

Voigt's contract with the state obligated him to discharge all liabilities for injuries under ch. 102, Stats. Based upon this provision, counsel for Reitan-Lerdahl & Company also argue that its claim for workmen's compensation premiums must be upheld under the provisions of sec. 102.06, Stats. This statute provides that, "An employer shall be liable for compensation to an *employee* of a contractor or subcontractor under him who is not subject to this chapter, or who has not complied with the conditions of sec. 102.28 (2) in any case where such employer would have been liable for compensation if such *employee* had been working directly for him, . . ." (Italics supplied.) Counsel would interpret this statute to make Voigt responsible for workmen's compensation insurance premiums on Volck corporation's employees. We do not deem this a correct construction of the statutory language. The statute only makes an employer liable to "employees" for compensation. It does not include responsibility to the supplier of workmen's compensation insurance to employees of subcontractors.

Therefore, neither the portion of Reitan-Lerdahl & Company's claim for unpaid workmen's compensation insurance premiums, nor the portion for unpaid public liability insurance premiums, is lienable.

*By the Court.*—Judgment reversed, and cause remanded to enter the proper judgment in conformity with this opinion.

The following memorandum was filed October 2, 1962:

PER CURIAM (*on motion for rehearing*). Several of the respondents have pointed out on this motion for rehearing that after paying the lienable claims there will remain $6,146.42 in the fund held by the state. The unpaid claims of respondents having no lien rights total $9,829.26. It is urged that it would be inequitable for the circuit court to turn over the $6,146.42 to the principal contractor, Voigt, he having failed to appeal and having waived the provisions of his contract with Volck regarding a bond.

The movants are concerned that our opinion, together with the mandate of this court, will preclude the circuit court from making an equitable distribution of the balance of the fund. The appellant Hartford Accident & Indemnity Company has also indicated its request that provision be made for its costs and disbursements.

It was not the intention of our original opinion to foreclose the circuit court from determining the costs and also the relative interests of the parties to share in the remaining funds held by the state.

The motion for rehearing is denied, without costs.