JAMES W. THOMAS CONSTRUCTION COMPANY, INC., Plaintiff-Appellant, v. CITY OF MADISON, Defendant-Respondent.

*No. 75-294. Argued March 30, 1977.—Decided July 1, 1977.*
(Also reported in 255 N. W. 2d 551.)

346

For the appellant there were briefs by *Arvin A. Sather, Benjamin W. Laird* and *Michael, Best & Friedrich,* and oral argument by *Arvin A. Sather,* all of Madison.

For the respondent the cause was argued by *Larry W. O'Brien,* deputy city attorney, with whom on the brief was *Henry A. Gempeler,* city attorney.

DAY, J. The plaintiff-appellant, James W. Thomas Construction Co. (Thomas), a Madison general contractor, brought suit against the defendant-respondent city of Madison to enforce a lien on the city-owned Hartmeyer Ice Arena. The appeal is from a July 29, 1975 judgment sustaining a demurrer without permission to replead. The issue is whether the amended complaint states facts sufficient to constitute a cause of action.

The facts as adduced by the complaint and the documents incorporated therein are as follows.

On August 21, 1973 the city entered into a five-year agreement with Campbell Enterprises, Inc. (Campbell), a Pennsylvania corporation, in which the city leased to Campbell the Hartmeyer Ice Arena for use by the Madison Blues Hockey Team. The contract states the team is owned and operated by Campbell. The contract recited that the city was desirous of renovating and improving the ice arena. Principal consideration for use of the facility was the payment by Campbell to the city of $25,000 each year and Campbell's commitment to make capital improvements to the facility totaling at least $122,000. Improvements were to include, but were not limited to, renovation or improvement or creation of locker and shower rooms, player boxes, penalty boxes, concession stands, box offices, permanent seating, new lighting and plexiglass crowd protection, all in accordance with plans and specifications on file with the Parks Commission. Furthermore, any contract and subcontract

let by Campbell was required to include lien waivers by contractor and subcontractor "to hold city harmless in case of default by Campbell."

Campbell was given the responsibility for management and operation of the ice arena and an exclusive use of the ice insofar as professional and semi-professional hockey was concerned. However, the Madison Blues were restricted to specific times when they could use the arena with practice time totaling not more than six hours per week. The city maintained control of and authority over allocation of ice time to other users of the arena as well as the authority to set fees for these uses. City personnel were entitled to make periodic inspections of the facility to monitor Campbell's management. The contract further provided that "(t)itle to the described premises, the improvements thereto, existing and any new equipment, shall be in the city."

The complaint alleges that on or about October 22, 1973, Campbell entered into a contract with Thomas requiring Thomas, as general contractor, to furnish labor and materials for the improvement of the Hartmeyer Ice Arena. Thomas performed this work, including construction of two locker rooms, an ice making machine garage, a ticket booth, skate shop, removal of old locker rooms, installation of plexiglass shields, bleachers, remodeling an "old tavern" into an office and improvement of the parking lot.

Campbell agreed to make payment on a "time and material" basis. Thomas alleged there is now due and owing $41,119.42 together with interest at the rate of one per cent per month on said sum from and after January 1, 1974. This is the amount in controversy.

March 26, 1974, within six months after the date of furnishing the last labor and materials, Thomas filed its claim for construction lien and the amount due.

Pursuant to sec. 62.25 (1973),[1] Stats., Thomas filed a claim with the defendant for the foregoing sum on April 9, 1974. The complaint recites that the City Council "tabled" the claim and the Mayor, on August 27, 1974, ruled the claim was disallowed.

The action was commenced on September 24, 1974 and on February 14, 1975 the court issued an order sustaining a demurrer to the original complaint. The court, held *inter alia*, that plaintiff's cause of action in quasi-contract or unjust enrichment did not lie because where statutory remedies are available, common law and equity actions are not available. A demurrer to a cause of action alleging estoppel in pais was also sustained. In the amended complaint explicit reference to these theories was deleted.

The trial court sustained the demurrer to the amended complaint, principally because it determined Campbell, in its relation to the city, was an independent contractor, a status which the court found "obviously inconsistent" with Thomas' alternative theories that Campbell was either an agent of or a joint adventurer with the city.

On demurrer the question before the trial court was whether *any* cause of action had been stated on which relief could be granted. The plaintiff is bound by the facts he alleges but not his theory of recovery. *Int'l Found. Emp. Ben. Plans v. Brookfield,* 74 Wis.2d 544, 548, 247 N.W.2d 129 (1976) ; *Lange v. Town of Norway,* 77 Wis.2d 313, 317, 253 N.W.2d 240 (1977).

---

[1] "62.25 *Claims And Actions.* (1) Claims. (a) No action shall be maintained against a city upon a claim of any kind until the claimant shall first present his claim to the council and it is disallowed in whole or in part. Failure of the council to pass upon the claim within 90 days after presentation is a disallowance. . . ."

A construction lien may be imposed on all interests in land belonging to its owners. Sec. 289.01(3), Stats. 1973. "Owner" is defined in sub. (2) (d) as follows:

"289.01 *Construction Liens.* . . . (2) *Definitions.* . . . (d) 'Owner' means the owner of any interest in land who, personally or through an agent, enters into a contract, express or implied, for the improvement of the land. Agency will be presumed, in the absence of clear and convincing evidence to the contrary, between employer and employe, between spouses, between joint tenants and among tenants in common, but there shall be a similar presumption against agency in all other cases. . . ."

The question before this court is whether Campbell acted as an agent of the city when it engaged Thomas' service so as to make the city an owner under the construction lien law.

We hold an agency relationship was sufficiently pleaded to survive the test on demurrer.

Paragraph thirteen of the amended complaint alleged in part, "Campbell Enterprises, Inc. was acting as an agent for the defendant (city) in contracting with the plaintiff (Thomas) pursuant to the authorization of the defendant."

It is the settled law in this state a general statement that a party is an agent of another sufficiently alleges the existence of the agency relationship. This was discussed in *Herro v. Wisconsin Fed. Surp. P. Dev. Corp.*, 42 Wis.2d 87, 104–105, 166 N.W.2d 433 (1969), citing Annot. (1956), 45 A.L.R.2d 586, and reiterated in *St. Francis S. & L. Asso. v. Hearthside Homes*, 65 Wis.2d 74, 79, 221 N.W.2d 840 (1974) and *Mercantile Contract Purchase Corp. v. Melnick*, 47 Wis.2d 580, 584, 177 N.W. 2d 858 (1970). Thus, the allegation of agency is sufficient to meet the demurrer challenge.

Although it is not absolutely clear, the trial court apparently rejected the agency theory for the same reason it rejected Thomas' allegation that there existed a joint venture between Campbell and the city. That reason was the trial court's conclusion the status of independent contractor is inconsistent with a finding of agency.

In Restatement (Second) of Agency (1957), an independent contractor is described in sec. 2(3) as follows:

"An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of an undertaking. *He may or may not be an agent.*" (Emphasis supplied.)

Comment "b" to sec. 2 states,

"The word 'servant' is used in contrast with 'independent contractors.' The latter term includes all persons who contract to do something for another but who are not servants in doing the work undertaken. *An agent who is not a servant is, therefore, an independent contractor when he contracts to act on account of the principal.*" (Emphasis supplied.)

The contract between the city and Campbell reads in part,

"VII. *Indemnification and Insurance.* A. *Indemnification.* The City shall stand totally indemnified by Campbell. Campbell is and shall be deemed an independent contractor and operator responsible to all parties for its respective acts or omissions. In the use of the described premises, in the erection or construction of any improvements, temporary or permanent, thereon, and in the exercise of the enjoyment or responsibilities of this Agreement, Campbell shall indemnify and save harmless the City from any and all losses or claims for damages that may result against the City or others because of the negligence or willful acts on the part of Campbell, the Madison Blues Hockey Team, their opponents, subcon-

tractors, and employees, agents, servants, or patrons. The City shall not be responsible for any damage or injury that may accrue to the Madison Blues Hockey Team or its opponents or their patrons or the agents, servants, employees or property thereof from any cause whatever during the term of this Agreement. Campbell specifically and expressly agrees to indemnify against any and all claims for such loss, damage or injury."

This language is not dispositive of whether Campbell acted as an agent of the city in engaging the appellant general contractor. The trial court erred in concluding it was.

Agency was defined in *Troy Co. v. Perry*, 68 Wis.2d 170, 174, 228 N.W.2d 169 (1975) according to the Restatement definition:

" 'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " Restatement 2d, *Agency*, sec. 1(1).

The city cites *Peabody Seating Co. v. Jim Cullen, Inc.*, 56 Wis.2d 119, 201 N.W.2d 546 (1972) for the proposition there are three elements necessary to support a finding of agency and that the third element requires the holding that no agency relationship is present in the instant case. At 56 Wis.2d 123 it is said,

"The elements necessary to support such finding of agency have been set forth by this court to be: (1) 'the express or implied manifestation of one party that the other party shall act for him;' (2) 'who has retained the right to control the details of the work;' and (3) 'whether the party agreeing to perform the service is engaged in a distinct occupation or business apart from that of the person who engages the services.' " (Footnote omitted.)

*Peabody* is the third of three cases which dealt with the situation in which a supplier of a subcontractor

sought to enforce a contractor's lien on sums owed a general contractor. In *Lehmann Tire & Supply v. Mashuda Constr. Co.,* 14 Wis.2d 176, 109 N.W.2d 650 (1961) the court held that under the language of sec. 289.53(1), Stats. 1959[2] persons entitled to a public improvement lien were limited to those who supplied lienable items to the general contractor. 14 Wis.2d at 180. The rule was restated in *Boehck Construction Equipment Corp. v. Voight,* 17 Wis.2d 62, 67, 115 N.W.2d 627, 117 N.W.2d 372 (1962). The public-improvement lien provided by sec. 289.53, Stats. is not available to suppliers of a subcontractor of a party with a state contract for road construction or improvement. For that reason the would-be claimant, to prevail, had to demonstrate the person the claimant supplied was an agent, not a sub- (or independent) contractor of the general contractor. (*Id.*) *Boehck Construction* held that "whether the party agreeing to perform the service is engaged in a distinct occupation or business apart from that of the person who engages the services" was one of several factors used to determine whether the person supplied by the

---

[2] "289.53. *Public Improvements; Lien On Contractor; Duty Of Officials.* (1) Any person furnishing labor or materials to be used or consumed in making public improvements or performing public work (including fuel, lumber, machinery, vehicles, tractors, equipment, fixtures, apparatus, tools, appliances, supplies, electrical energy, gasoline, motor oil, lubricating oil, greases, premiums for workmen's compensation insurance and the contributions for unemployment compensation) to any contractor (except in cities of the first class) shall have a lien on the money or bonds or warrants due or to become due the contractor therefor; provided the lienor, before payment is made to the contractor, gives written notice to the debtor state, county, town or municipality of his claim. It shall withhold a sufficient amount to pay the claim; and when it is admitted by the contractor or established as provided in subsection (3), shall pay the same and charge it to the contractor. Any officer violating the duty hereby imposed shall be liable on his official bond to the claimant for the damages resulting from such violation. There shall be no preference between the lienors serving such notices. . . ."

claimant was an independent contractor or an agent vis a vis the general contractor. 17 Wis.2d 68–69.

But in the instant case, Campbell, with whom Thomas contracted, was the general contractor. Campbell was not a middleman, neither subcontractor nor agent, of the general contractor. Thus, Peabody Seating, following the *Lehmann* analysis and cited by respondent, is not applicable in this case.

In paragraph thirteen of its complaint Thomas also alleged Campbell engaged Thomas' services on behalf of a joint venture between Campbell and the city. One joint adventurer may bind his associates in matters within the scope of the joint enterprise. *Goodsitt v. Richter*, 216 Wis. 351, 354, 257 N.W. 23, 95 A.L.R. 1238 (1934). *See generally*, 46 Am. Jur.2d *Joint Ventures*, sec. 57. We hold that agency has been adequately pleaded. Thomas has thus alleged facts sufficient to state a cause of action under the construction lien statute.

*By the Court.*—Judgment reversed.