WILLIAM A.J. DRENGLER, Corporation Counsel Marathon County
You asked my predecessor for an opinion on the following question:
 Given the history and judicial interpretation of sec. 66.29 (7), Stats., does a public entity have discretionary power to demand a full and complete list of all the subcontractors and suppliers that a bidder will contract with on a given project, and the class of work to be performed by each?
More specifically, you asked whether Marathon County can consider a bid invalid if the proposal does not contain a complete list of material suppliers and subcontractors, in four different factual settings.
As a general rule, bids for municipal contracts must substantially comply with all requirements specified in statutes, ordinances and bid advertisements. 10 McQuillin MunicipalCorporations § 29.65 (3d ed. 1981). Moreover, a municipality can generally decline a bid for failure of literal compliance with specifications as advertised. Id. You explain that Marathon County currently requires a list of subcontractors through its County Project Manual, and specifies that failure to comply is grounds to reject the bid as invalid. Your question, then, is whether section 66.29 (7), Stats., effectively overrides the general rule and limits municipal authority to reject certain bids. The statute provides in relevant part:
 BIDDER'S CERTIFICATE. On all contracts the bidder shall . . . submit a list of the subcontractors he proposes to contract with, and the class of work to be performed by each, provided that to qualify for such listing such subcontractor must first submit his bid in writing, to the general contractor at least 48 hours prior to the time of the bid closing, which list shall not be added to nor altered without the written consent of the municipality. A proposal of a bidder shall not be invalid if any subcontractor *Page 30 and the class of work to be performed by such subcontractor has been omitted from a proposal; such omission shall be considered as inadvertent, or that the bidder will perform the work himself.
This language seems to require the kind of bid specifications that Marathon County now issues, but at the same time directs that a bid "shall not be invalid" for failure to comply with the requirement. Conceivably, the last sentence of the section actually prohibits a municipality from rejecting a bid solely because of an incomplete subcontractor list.
However, the legislative history of section 66.29 (7) leads me to conclude that the Legislature never intended such a severe restriction on municipal authority to reject bids. Rather, the debate over amendments to this section has been whether bidders must submit subcontractor lists as a statutory mandate, or only if municipalities so require. Before 1955, the statute unequivocally required that contractors include in bid proposals "a full and complete list of all the proposed subcontractors and the class of work to be performed by each . . . ." Sec. 66.29 (7), Stats. (1953). A 1955 amendment removed the mandatory subcontractor list, and instead provided that municipalities could require such a list at their own discretion. Ch. 406, sec. 2, Laws of 1955. Even under the amended statute, though, a municipality could reject a bid that failed to comply with its subcontractor listing requirement. See Druml Co. v. Knapp,6 Wis.2d 418, 94 N.W.2d 615 (1959).
A 1959 amendment ultimately produced the current language, but began as an effort to reinstate the mandatory subcontractor lists. The original bill, 1959 Assembly Bill 574, simply restored the pre-1955 language. Subcontractors advanced this change, complaining that general contractors subjected subcontractors to "bid-peddling" when the bid specification did not require a subcontractor list. See letter from Peter Woboril, Wisconsin Council of Painting and Decorating Contractors of America, to Assemblyman Glenn Henry, Labor Committee, April 17, 1959; in 1959 A.B. 574 drafting file. General contractors opposed the amendment, as did the League of Wisconsin Municipalities, which argued that an inadvertent omission of a subcontractor from a bid might subject a municipality to "nuisance litigation." Id. Municipalities, in other words, worried that a mandatory subcontractor list reduced their *Page 31 
flexibility and exposed bid decisions to challenge on technical grounds.
Hoping to eliminate "bid-peddling" but also meet the municipalities' concerns, the subcontractors offered an amendment providing that a bid proposal "shall not be deemed invalid if the bidder establishes to the satisfaction of the municipality that any subcontractor . . . has been inadvertently omitted from a proposal." Id. 1959 A.B. 574, Amendment 1. This amendment, which the assembly adopted, is the source of the current provision that a bid "shall not be invalid" because of an omitted subcontractor, and the context shows that one purpose was to protect municipal discretion. The bidder was required to submit a subcontractor list, but the municipality could overlook inadvertent omissions from the list without fear that an unsuccessful bidder would challenge the accepted bid as invalid. Similarly, the municipality could reject a bid because the list was incomplete, subject only to the bidder's "inadvertent omission" defense.
The senate amended the assembly bill by introducing the language now in the statute, but nothing in the legislative history shows an intent to alter the basic thrust of the subcontractors' proposal: reinstate the mandatory subcontractor list, but protect municipalities from litigation over that requirement. The senate version, in fact, tightened the control on general contractors, limiting the subcontractor list to those who submit bids in writing at least forty-eight hours before bid closing. The amendment also fully protected a municipal decision to accept a bid, specifying that a bid "shall not be invalid" if a qualified subcontractor is omitted; such omissions are deemed inadvertent (or evidence that the bidder plans to perform the work) rather than subject to proof as in the assembly version. Standing alone, that same language seems to prohibit any rejection of a bid based on omitted subcontractors. However, such a reading effectively nullifies the subcontractor list requirement, and removes traditional municipal authority to reject proposals that violate bid specifications. The history of section 66.29 (7) shows no hint that the Legislature perceived municipal rejection of bids as a problem, or that it intended to place significant restrictions on municipal power to enforce bidding requirements.
In my view, section 66.29 (7) simply provides that omission of a subcontractor from a proposal does not render the proposal statutorily invalid. When a municipality receives a bid containing an *Page 32 
incomplete subcontractor list, it must consider the bid. The municipality can either accept the bid or notify the general contractor that it intends to reject the bid for failure to comply with bid specifications. If the contractor can produce evidence that it acquired timely written bids, then the omission is presumptively inadvertent. Likewise, if the contractor indicates an intention and an ability to perform the work itself, the bid may not be rejected on that basis. This interpretation respects the underlying purpose of section 66.29 (7), which is to protect the public and allow the municipality to pass on the capacity of subcontractors and suppliers named. See Druml,6 Wis.2d 418; Boehck Construction Equipment Corp. v. Voight,17 Wis.2d 62, 75, 115 N.W.2d 627, 117 N.W.2d 372 (1962).
Turning to your four specific questions, you first ask whether Marathon County may consider a proposal invalid when the bidder receives oral bids from subcontractors and omits those subcontractors from his proposal to the county. Had the bidder included subcontractors who failed to submit written bids, the proposal would be invalid under the terms of the statute and the county should refuse to consider it. Because the bidder properly excluded the deficient subcontractor bids, the county must consider his proposal. The county, though, may nevertheless reject the proposal if the bidder failed to list all the subcontractors he intends to work with, and the class of work each will perform. In other words, if the bidder fails to obtain timely written subcontractor bids, he can submit an incomplete proposal but risks rejection for failure to comply with bid specifications.
Your second question is whether Marathon County may "invalidate the proposal" when the subcontractors submitted timely, written bids but the bidder omitted them from his proposal. This bidder secured his subcontract bids as the statute requires, and erred only in failing to name them in his proposal. In my opinion, these are the omissions the Legislature intended to deem inadvertent, such that the municipality must consider them as part of the original proposal. The assembly's 1959 amendment to section 66.29 (7) originally allowed bidders this "inadvertence" defense, and the enacted language retained the idea but relieved bidders of a duty to prove the inadvertence of an omission. This interpretation effectuates the 1959 amendment's dual purposes: it precludes last-minute bid-peddling by general contractors; and reduces litigation over the subcontractor requirement, providing in effect a "substantial compliance" *Page 33 
standard. In sum, if the bid's only deficiency is failure to name subcontractors who were in fact qualified for listing, a municipality cannot reject the bid on that basis alone; the proposal is deemed to include the omitted subcontractors.
Your third question is whether the county may invalidate a proposal if the bidder omits subcontractors who submitted their bids in writing but after the forty-eight hour deadline. The answer is the same as for question one: the proposal is not automatically invalid, but the county may reject it because the subcontractor list is incomplete.
Your fourth question is whether the county may invalidate a proposal if, regardless of when the bidder receives written bids from subcontractors, he names alternative subcontractors and suppliers for each class of work to be performed. The Druml court specifically held that such alternative listing invalidated the general contractor's bid. Your question is really whether the 1959 amendment affects that holding. In my opinion, it does not.
The Druml court voiced two major objections to alternative subcontractor listing. First, that practice allows the bidder to invite competition among the listed contractors after bid acceptance. Druml, 6 Wis.2d at 423. Second, alternative listing makes it "more difficult, and possibly more expensive, for the [municipality] to ascertain the reliability and competence of several firms for each part of the work to be subcontracted." Id. That difficulty clearly remains despite the 1959 amendment. Despite the statute's requirement of written bids, alternative subcontractor listing would still invite the post bid competition which "tends to benefit the contractor, not the public." Druml,6 Wis.2d at 423. A proposal that lists alternative subcontractors for each class of work is invalid under section 66.29 (7), and the county should not consider it.
To conclude, and in answer to your general question, a public entity has power under section 66.29 (7) to demand a full list of subcontractors and suppliers with which a bidder will contract. The statute, in fact, requires such a list. Municipalities have discretion to accept or reject a proposal that includes an incomplete list, but a list is deemed complete if the bidder merely omitted subcontractors who submitted timely, written bids. Such subcontractors are "qualified for listing" under the statute and are considered to be part of the proposal despite their omission. In that limited circumstance, a *Page 34 
municipality may not reject the bid solely because the list was incomplete at the time submitted.
DJH:AL:sb *Page 35