**GENESYS SOFTWARE SYSTEMS, INC., Plaintiff–Appellant,**

v.

**CERIDIAN CORPORATION, Ceridian HCM, Inc., CSIG Management, Inc., William Snyder, Defendants–Appellees,**

David A. Fischer, Defendant.

No. 16-10773
Non-Argument Calendar

United States Court of Appeals,
Eleventh Circuit.

Date Filed: 11/22/2016

Sanford Jay Asman, Law Office of Sanford J. Asman, Atlanta, GA, for Plaintiff–Appellant.

Gary Hansen, Aaron Mills Scott, Fox Rothschild, LLP–MN, Minneapolis, MN, Lawrence Hugh Kunin, Morris Manning & Martin, LLP, Atlanta, GA, Defendants–Appellees.

Before WILLIAM PRYOR, JULIE CARNES, and FAY, Circuit Judges.

PER CURIAM:

Plaintiff Genesys Software Systems sued Defendants Ceridian, iHouse, iHouse's president William Snyder, and David Fischer, alleging copyright infringement, among other claims. The district court granted summary judgment to Defendants. Significantly, Plaintiff had released its claims in a previous settlement agreement ("the Settlement Agreement") with a third party, Lands' End, as to acts of Lands' End's agents. The court concluded that independent contractor David Fischer, who was the only person to access Plaintiff's software on Lands' End's mainframe after Lands' End's software license had expired, was an agent of Lands' End. That being so, the release in the prior settlement agreement precluded any finding of liability in Plaintiff's new action. We agree.

## I. BACKGROUND

### A. Facts

#### 1. Lands' End's File Extractions

Plaintiff licenses software for managing payroll, benefits, taxes, and related services. In January 1993, Plaintiff entered into a 20–year software license agreement ("the Licensing Agreement") with Lands' End, effective January 19, 1993. Lands' End used Plaintiff's software to manage its employee data. In 2012, Lands' End decided to transition from Plaintiff's software to software produced by Defendant Ceridian Corporation.

In making that transition, Lands' End encountered difficulties extracting its employee data files in a format that was compatible with Ceridian's software. Accordingly, Lands' End asked Ceridian to

identify a consultant who could assist with data extraction. Ceridian suggested CSIG Management, doing business as iHouse. iHouse had a relationship with David Fischer, an independent contractor, who had extensive experience using Plaintiff's software. Fischer was ultimately selected for the job.

Fischer traveled to Lands' End's offices in Wisconsin. Lands' End provided Fischer with access to its mainframe computer and told Fischer where to find the files that Lands' End wanted extracted. Lands' End directed Fischer to extract the employee data files. Over the next several weeks, Fischer extracted Lands' End's employee data files and provided those files directly to Lands' End. After Fischer returned to his home in Pennsylvania, Lands' End requested that Fischer extract additional files remotely. Lands' End provided Fischer with remote access to its mainframe to perform the requested extractions. Fischer ran these extractions from May 2012 through March 2013, again providing the extracted files directly to Lands' End. At Lands' End's direction, Fischer stopped running the extractions in March 2013. Ceridian paid iHouse for the majority of Fischer's work; Lands' End also paid a portion.

## 2. The Wisconsin Litigation

On January 17, 2013, Plaintiff filed a single-count declaratory judgment action in the Western District of Wisconsin seeking a declaration as to the Licensing Agreement's expiration date. Complaint at 4–5, *Lands' End, Inc. v. Genesys Software Sys., Inc.*, No. 13–cv–38, 2013 WL 425355 (W.D. Wis. Jan. 17, 2013), ECF No. 1. Lands' End filed counterclaims for breach of contract, injunctive relief, conversion, and misappropriation of trade secrets. *Id.* at ECF No. 5. On July 3, 2013, the court

held that the Licensing Agreement expired on January 19, 2013. *Id.* at ECF No. 26.

Thereafter, on April 24, 2014 the parties entered into a settlement agreement ("the Settlement Agreement"), under which Lands' End agreed to pay Plaintiff $90,000. As relevant here, the Settlement Agreement also included the following pertinent terms:

WHEREAS, the Parties desire to settle any and all claims between them arising out of or related to the Lawsuit[,] ... the Parties agree as follows:

4. Except as otherwise set forth herein, the Parties, intending to be legally bound for themselves, and their respective parents and subsidiaries, release and discharge each other, their past and present principals, officers, directors, employees, agents, attorneys, insurers, Related Entities, parents, subsidiaries, successors, and assigns, from any and all actions, causes of action, claims, covenants, contracts, liabilities, demands, debts, assessments, special assessments, suits, proceedings, damages, and appeals, known or unknown, liquidated or unliquidated, contingent or non-contingent, arising from or pertaining in any way to all·events, facts or occurrences from the beginning of the World to the Effective Date of this Agreement. This release is intended to serve and shall serve as a complete and total release of all claims or any kind except for those obligations that are expressly created by this Agreement.

5. As used in Section 4 hereof, the term "Related Entities" expressly excludes any third party vendor or service providers (*e.g.*, iHouse, Ceridian Corporation, Ceridian HCM, Inc., etc.), any employee of such third parties, or anyone other than the entities and individuals listed above in Paragraph 4, but solely with respect to any release of any

claim that Genesys may assert based solely on the acts, errors, or omissions of those third parties and their employees and <u>not based on the acts, errors, or omissions of the entities and individuals listed above</u> in Paragraph 4. It is expressly agreed to and understood by Lands' End that a material aspect to the entry into this Agreement by Genesys is that it has expressly preserved such claims against third party vendors and service providers and their employees. Notwithstanding the release granted in Section 4 hereof, such release shall not apply to any individual who is a former Lands' End employee, if the claim asserted against such individual arose after such individual left Lands' End's employ. (emphasis added).

After signing the Settlement Agreement, the parties filed a Stipulation of Dismissal in the Western District of Wisconsin, thereby terminating the lawsuit. *Id.* at ECF No. 85.

### B. Procedural History

On August 18, 2014, Plaintiff sued Defendants Ceridian, iHouse, iHouse's president William Snyder, and David Fischer in the Northern District of Georgia, where Plaintiff's parent company has its principal place of business. The complaint asserted claims for copyright infringement, unfair competition, and common law conspiracy. Each claim arose out of Plaintiff's assertion that Defendants had continued to use Plaintiff's software after the expiration of the Licensing Agreement "to perform various functions, including . . . data extraction from the Genesys Software." Defendants moved to dismiss all three claims and to dismiss Plaintiff's claims against Fischer for lack of personal jurisdiction. On November 6, 2014, before the district court ruled on Defendants' motion to dismiss, Plaintiff voluntarily dismissed Fischer, who had performed the extractions. The

district court granted the remaining defendants' motion to dismiss with respect to the unfair competition and common law conspiracy claims, but denied their motion as to the copyright infringement claim.

Defendants then moved for summary judgment on the copyright infringement claim. They argued that the infringement claim was barred by the release of claims in the Settlement Agreement. In particular, Defendants argued that the only person or entity who accessed Plaintiff's software after the expiration of the Licensing Agreement was David Fischer, who was an "agent" of Lands' End. Paragraph 4 of the Settlement Agreement released Lands' End and its "agents" from all claims by Plaintiff and thus barred Plaintiff's copyright infringement claim. In response, Plaintiff argued that the Licensing Agreement prohibited Lands' End from ever allowing a third party to use the Plaintiff's software. But even if the Licensing Agreement had permitted such use, it had expired before Defendants stopped using Plaintiff's software. Moreover, Defendants could not be described as "agents" of Lands' End.

The district court granted summary judgment in favor of Defendants. The court reasoned that there was no evidence that anyone other than Fischer accessed the Plaintiff software. Further, Fischer was an "agent" of Lands' End when he accessed the software because he had acted at the direction of and for the benefit of Lands' End. Plaintiff appealed the district court's grant of summary judgment in favor of Defendants.

## II. DISCUSSION

"We review *de novo* a district court's grant of summary judgment, resolving all reasonable factual disputes in favor of the non-moving party." *Liebman v. Metro.*

*Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). "Summary judgment is appropriate if there are no genuine issues of material fact and a party is entitled to judgment as a matter of law." *Gennusa v. Canova*, 748 F.3d 1103, 1108 (11th Cir. 2014) (citing Fed. R. Civ. P. 56(a); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 608 (11th Cir. 2014)).

On appeal, Plaintiff argues that the district court impermissibly decided issues of fact that should have been left to the jury. At bottom, Plaintiff argues that the district court erred in holding that (1) Fischer was an agent of Lands' End and, even if it did, that (2) paragraph 5 of the Settlement Agreement released Defendants from liability for actions of Lands' End's agents.

## A. The Scope of the Release [1]

█ Plaintiff argues that the parties to the Settlement Agreement did not intend to release claims against Defendants arising out of Fischer's accessing of Plaintiff's software and that it was improper for the district court to resolve this issue at the summary judgment stage. We disagree.

Paragraph 4 of the Settlement Agreement contains a general release of claims. It states that, among other parties, "agents" and "Related Entities" of Lands' End are "release[d] and discharge[d] . . . from any and all . . . liabilities." Paragraph 5, in turn, states: "As used in Section 4 [ ], the term 'Related Entities' expressly excludes any third party vendor or service providers (*e.g.*, iHouse, Ceridian Corpora-

tion, Ceridian HCM, Inc., etc.) . . . , but solely with respect to any release of any claim that Genesys may assert based solely on the acts, errors, or omissions of those third parties and their employees and not based on the acts, errors, or omissions of the entities and individuals listed above in Paragraph 4."

Thus, under ¶ 4, Lands' End's "agents" and "Related Entities" cannot be held liable for any infringement that may have occurred prior to the date that the Settlement Agreement was executed. Under ¶ 5, however, certain Related Entities, including Defendants here, may be liable, "*but solely with respect to . . . the acts, errors, or omissions of [the Related Entities] . . . and not based on the acts, errors, or omissions of the entities and individuals listed [ ] in Paragraph 4.*" In short, the release applies to acts or omissions attributable to "agents" of Lands' End prior to the date of the Settlement Agreement. Under ¶ 5, however, Defendants would not have been released from liability based on infringing acts performed by an individual <u>not</u> acting as an agent of Land's End. Thus, we agree with the district court's conclusion that to the extent Fischer was acting as an agent of Lands' End, Defendants cannot be held liable for Fischer's use of Plaintiff's software after the expiration of the Licensing Agreement.[2]

To the extent that Plaintiff argues that it never intended for the release to apply to Fischer's actions, Plaintiff's argument fails. It is axiomatic that the best indicator

---

1. Before the district court, Defendants argued that Wisconsin law governs the contract interpretation issues in this action, whereas Plaintiff argued that Georgia law governs. The district court held that Wisconsin law applies, albeit noting "no meaningful distinction between the application of Wisconsin or Georgia law to the issue at hand." Plaintiff does not now dispute the court's decision. Accordingly, we also apply Wisconsin law.

2. The district court concluded, and Plaintiff does not dispute on appeal, that Fischer was the only individual to access Plaintiff's software after the expiration of the Licensing Agreement. Thus, any liability Defendants might face would necessarily arise solely from Fischer's use of the software.

of contracting parties' intentions is the language in the contract itself. *See Tufail v. Midwest Hosp., LLC*, 348 Wis.2d 631, 833 N.W.2d 586, 592 (2013). Here, the contract is unambiguous, and Plaintiff's contradictory subjective understanding is of no moment. *Id.*; *Town Bank v. City Real Estate Dev., LLC*, 330 Wis.2d 340, 793 N.W.2d 476, 484 (2010). If Plaintiff's subjective intentions are not adequately reflected in the unambiguous language set out in ¶¶ 4 and 5 of the Settlement Agreement, Plaintiff should have drafted a contract that better reflected its intentions.

## B. Whether Fischer Was an Agent of Lands' End

" 'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.' " *James W. Thomas Constr. Co., Inc. v. Madison*, 79 Wis.2d 345, 255 N.W.2d 551, 554 (1977) (quoting Restatement (Second) of Agency § 1(1)); *accord Romero v. West Bend. Mut. Ins. Co.*, 371 Wis.2d 478, 885 N.W.2d 591, 601–02 (App. 2016) ("Attorneys, for example, have a fiduciary obligation to their clients, are subject to the control of clients, and can bind clients through their actions.").

The district court held that Fischer was operating as Lands' End's agent in accessing Plaintiff's software and thus concluded that Plaintiff's claims against Defendants arising out of Fischer's accessing of Plaintiff's software could not proceed. The district court reasoned that "Lands' End directed and controlled Fischer's access of the software, and Fischer provided the results of his access directly to Lands' End."

■ Before the district court, Plaintiff agreed that the interpretation of the release clause in the Settlement Agreement was potentially case-dispositive and should be decided by the district court as a matter of summary judgment based on those undisputed facts that were before the district court. On appeal, however, Plaintiff now argues that notwithstanding the above stipulation, the district court usurped the jury's fact-finding role by interpreting the release based on those same facts. We disagree.

First, Plaintiff characterizes as a disputed material fact the district court's determination that Fisher acted as an agent of Lands' End in extracting its personnel files from its system. Because Ceridian paid part of Fisher's compensation,[3] Plaintiff argues that Fisher was not Land's end's agent. Plaintiff's contention fails. First, the district court expressly acknowledged that Fischer was compensated in part by Ceridian. The district court correctly concluded that Fischer's compensation scheme, however, did not create a genuine issue of material fact as to whether Lands' End controlled Fischer because an agent can be beholden to more than one principal. *See* Restatement (Third) of Agency § 3.14. The question, however, was whether Fisher's work was subject to Land's End control and its consent to Fisher's actions. The undisputed facts establish that it was. Fisher extracted Land's End's data as the latter instructed him to do, and he provided that data directly to Land's End. He performed only those tasks that Land's End told him to do, and he stopped running data extractions when Land's End directed him to cease. Plaintiff has not pointed to any evidence to the contrary.

Accordingly, the district correctly concluded that Fisher acted as the agent of

---

**3.** Plaintiff offers no evidence that Ceridian played any role in directing Fischer's work.

Lands' End in performing his work. Further, as earlier noted, because Fisher was the only person or entity to perform the file extractions at issue, his allegedly infringing actions were performed by an agent of Land's End, whose actions triggered no additional liability, given the release clause of the Settlement Agreement.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Defendants.